Bauer, Appellee, *v.* The Pullman Co. et al., Appellants.
(Two cases.)

70

(Nos. 8942 and 8943—Decided April 2, 1968.)

*Messrs. Saul & Stone,* for appellees.
*Messrs. Dunbar, Kienzle & Murphey* and *Mr. David J. Young,* for appellants.

*Per Curiam.* These cases are consolidated appeals from the Franklin County Court of Common Pleas, wherein judgment was entered upon jury verdicts for both appellees. Appellants' motions for judgment notwithstanding the verdict and a new trial were overruled, and the instant appeal followed.

Appellants' first assignment of error concerns the

questions of variance and surprise. The amended petition alleges that Mrs. Bauer suffered an "impairment of her hearing" as a result of the negligence of the appellants. The evidence complained of concerns a hearing loss resulting from retinal surgery, such surgery being claimed to be the result of appellants' negligence. While the allegation in the petition might have been open to a motion to make definite and certain, we agree with the trial court that it was sufficient to permit the contested evidence and that no prejudicial variance occurred.

The surprise of which appellants complain came about as the result of a chain of events. It appears in the record that on October 4, 1963, in an effort to settle this litigation, appellees' Pennsylvania counsel wrote to The Pullman Company and set forth the claims which were being pressed against the appellants. In the letter it was stated that while Mrs. Bauer "lost her hearing for approximately one week" following surgery for the detached retina, "this left no permanent impairment after having cleared up." Efforts at compromise having failed to bear fruit, suit was filed and the first trial held. During that trial, no evidence was presented which directly related a permanent hearing loss to appellants' negligence, or suggested that such a loss came about as the result of the surgery. Following the abortive first trial and an appellate ruling that a new trial would have to be had (see 8 Ohio App. 2d 1), appellees informed appellants that the evidence at the second trial would be the same as that already heard. Three days before the commencement of the new trial, however, appellees withdrew this representation and notified appellants that they would have to insist upon "complete flexibility" in the presentation of their case in the new trial, and that any additional physical examinations by appellants would be agreed to. Appellants immediately had Mrs. Bauer reexamined by an eye specialist, but no ear specialist was thought necessary and no such examination was arranged before the trial. The planned introduction of evidence of a permanent hearing loss as the result of eye surgery was not reported to appellants by appellees.

In the middle of the second trial, the new ear evidence came to light and appellants advanced their claims of variance and surprise. We are of the opinion that it would have been an abuse of discretion for the trial court to deny appellants a recess for the purpose of preparing their defense to this new evidence. The somewhat intricate chain of causation involved in the ear evidence made for a legitimate claim of surprise, especially in view of the representations contained in the aforementioned letter of October 4, 1963. However, the record shows that appellants requested only an opportunity to have an ear specialist examine Mrs. Bauer and that this request was granted. It is true that the trial court indicated it would not delay the trial in order for appellants to secure their expert testimony, but this statement was made after the request for an additional examination had been granted and following appellants' statements that they "would like to have her examined tonight by an ear doctor" and that "all I ask is to have her examined." Had appellants been unable to secure the ear examination without delaying the trial and had they then been denied a request for a recess, the abuse of discretion heretofore noted could have matured. Since this did not occur, however, and since appellants obtained all that they informed the trial court they needed, no reversible error was committed by that court in its handling of the situation. (See *Ungerleider* v. *Ewers, Receiver of Levering Bros.*, 20 Ohio App. 79; *Parsch Lumber Co.* v. *McGrath*, 37 Ohio App. 37.)

We find no reversible error committed under the third, fourth, fifth and sixth assignments of error.

In the eighth assignment, appellants complain of the admission into evidence of the transcript of testimony of Dr. Moraitis given at a previous trial of this same case. The specific error assigned is:

"8. The court erred in permitting plaintiffs' counsel to read Dr. Moraitis' testimony to the jury even though the issues had changed substantially at the second trial."

Section 2317.06, Revised Code, provides:

"When a party or witness, after testifying orally,

dies, is beyond the jurisdiction of the court, cannot be found after diligent search, or is insane, or, through any physical or mental infirmity, is unable to testify, or has been summoned but appears to have been kept away by the adverse party, if the evidence given by such party or witness is incorporated into a bill of exceptions, in the case wherein such evidence was given, as being all the evidence given by such party or witness, and such bill has been signed by the judge or court before whom such evidence was given, the evidence so incorporated into such bill of exceptions may be read in evidence by either party on a further trial of the case. * * *"

Dr. Moraitis was a witness at a previous trial based on the same pleadings. He was beyond the jurisdiction of the court. His testimony was incorporated into a bill of exceptions as being all of the evidence given by him, and such bill had been signed by the judge. Thus, all the stated requirements of the statute were met.

Appellants complain that the "issues" had changed, and therefore they were denied a right of cross-examination. The word "issues" in this context refers to material evidentiary disputes. The "change" was the addition of evidence regarding a permanent hearing loss resulting from surgery for the eye injury. The contention is, apparently, that such a transcript is not admissible in evidence unless, in addition to the statutory requirements, there is also a substantial identity of evidentiary issues.

Appellants were not denied a right of cross-examination. They had a full opportunity to examine the witness. The problem is that they did not use the opportunity to question the witness as to hearing impairment because at that time there was no evidence presented on permanent ear damage, although the issue had been pleaded. Their problem would have been the same if there had been a deposition of the doctor just before the second trial, i. e., appellants' complaint cannot be to the form of, or manner of obtaining, the evidence, but to the lack of notice.

Appellants' contention is another facet of their contention of unfair "surprise." It is not a question of com-

pliance with the statute, nor the admissibility of evidence, nor denial of cross-examination. It is a question of notice and an adequate opportunity to defend.

As to "surprise" and inadequate opportunity to defend, appellants were bluntly made aware of the claim of ear damage when appellee produced an ear specialist, Dr. Hillman. As previously noted, appellants did not request a continuance. They asked for, and obtained, an examination of appellee by another ear specialist (who later testified for the defense). On the following day, appellee offered the transcript of Dr. Moraitis' testimony. Again, no request for a continuance was made. Rather, counsel strenuously argued to the trial court, as to this court, that the transcript was not admissible under Section 2317.06, Revised Code, and that he wished to cross-examine the doctor as to ear and hearing damage, and that he ought to be permitted to tell the jury that this doctor had not been questioned as to ear and hearing damage.

Appellants were indeed surprised. As we have suggested, had a continuance been requested, it would have been an abuse of discretion not to grant appellants some reasonable relief. But no such request was made, and the only relief requested (an examination) was granted.

Assignment of error number seven contends that there was no proper showing of the unavailability of Dr. Moraitis and, therefore, that the requirements of Section 2317.06, Revised Code, were not met. Appellants argue that: "We do not believe that an adequate showing of unavailability is made by simply showing that the witness is outside the state."

Section 2317.06, Revised Code, does not by its terms require anything more than a showing that a witness is "beyond the jurisdiction of the court." Appellants' argument concerning the unavailability theory stems from their citation of the case of *New York Central Rd. Co.* v. *Stevens, Admr.*, 126 Ohio St. 395. As we read that case, it does not stand for the proposition that even though a witness is beyond the trial court's jurisdiction to compel attendance through process it must also be shown that the witness is otherwise unavailable. We agree that a reasonable explanation should be made to the trial court as to why

the foreign witness cannot be present, and that the court may, in its discretion, continue or recess the cause. However, it is not an abuse of discretion to allow the reading of testimony from a prior trial where the requirements of Section 2317.06, *supra,* have been met and counsel has satisfied the court that the witness is in a foreign state and cannot leave his medical practice there for the next seven days. (See *M. Werk Co.* v. *Martin,* 18 Ohio Law Abs. 81; compare *Summons* v. *State,* 5 Ohio St. 325, and *Sheets, Exr.,* v. *Hodes, Admr.,* 142 Ohio St. 559.)

We find no reversible error committed under the ninth, tenth, eleventh, twelfth and thirteenth assignments of error.

Assignment of error number fourteen questions the absence of testimony from which the jury could reasonably determine the monetary value of the services lost by Mr. Bauer as the result of Mrs. Bauer's disability. It is noted that this case involved not only loss of services, but loss of consortium as well. While it is food for thought that, in spite of conflicting indications in some authorities to the contrary, an action for the loss of the society, companionship, and comfort of one's spouse should be actionable in its own right, the court's charge in the case at bar coupled the two and instructed the jury that it was to consider compensating Mr. Bauer for the loss of his wife's "services and consortium." Since there was no evidence to enable the jury to arrive at a monetary determination of the value of the husband's loss of his wife's services, it is inescapable that the jury was forced to speculate on the question of services, and it is impossible to partition the total award and announce that it was all for loss of consortium and medical expenses.

In view of our conclusions herein, discussion of the second and fifteenth assignments of error will be omitted.

The judgment in case No. 8942 will be affirmed. The judgment in case No. 8943 will be reversed, and that cause remanded for further proceedings.

*Judgments accordingly.*

DUFFEY, P. J., and TROOP, J., concur.

HERBERT, J., dissenting. It is my opinion that Section 2317.06, Revised Code, cannot be used in cases where an opposing party has not been reasonably accorded a full and fair opportunity to cross-examine the witness on all matters being litigated.

The eighth assignment of error specifically raises the question of appellants' right to cross-examine the absent witness, Dr. Moraitis, concerning the new matter of surgery-related, permanent hearing loss. I recognize that the witness was an eye rather than an ear specialist, but he was also a doctor of medicine and thus possessed sufficient qualifications to render cross-examination concerning his patient's hearing impairment as the direct result of eye surgery both relevant and necessary to appellants' case.

As was readily acknowledged in oral argument, the introduction of this special damage evidence was secretly planned in the express hope that catching the appellants by surprise would be to appellees' advantage in the new trial. I find it difficult to accede to appellees' view that to inform the court and opposing counsel of the new claim would have been unethical. It has always been a plaintiff's burden to openly state all elements of his case for which compensation is sought; and when damages which do not normally and foreseeably flow from the breach of duty are involved, the necessity for sustaining that burden becomes all the more reasonable.

The travail and expense to which all parties have been put since the initial filing of this litigation is appalling, and a reversal would do little to remedy the situation. However, it is my opinion that a review of this entire record indicates that the appellants' rights were seriously prejudiced under the eighth assignment of error.