**Phyllis NEYER, et al.,**
**Plaintiffs–Appellees,**

v.

**UNITED STATES of America,**
**Defendant–Appellant.**

No. 86–4062.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 8, 1987.
Decided April 27, 1988.

642

Thomas B. Almy, Torts Branch, Civil Div., U.S. Dept. of Justice, Robert S. Greenspan, U.S. Dept. of Justice, Civil Div., Washington, D.C., Marc Richman (Lead Counsel) (argued), Russell Caplan, for defendant-appellant.

Richard L. Creighton, Jr. (argued), Joseph L. Trauth, Jr., Keating, Muething & Klekamp, Cincinnati, Ohio, for plaintiffs-appellees.

Before KEITH and WELLFORD, Circuit Judges, and HULL *, District Judge.

WELLFORD, Circuit Judge.

This case involves a question about the amount of compensatory damages awarded by the district court in a Federal Tort Claims Act claim in which the United States has conceded liability. We affirm for the reasons indicated except for one element of damages as to which we must remand.

* The Honorable Thomas G. Hull, Chief U.S. District Judge for the Eastern District of Tennessee, sitting by designation.

On December 16, 1982, a twin-engine airplane flown by FBI agents crashed into the car in which Phyllis Neyer was sitting. The crash ignited the car, and Mrs. Neyer found herself trapped until rescued. As a result, Mrs. Neyer sustained a broken leg and first, second, and third degree burns over at least twelve percent of her body. Following the accident, she was hospitalized for sixty-four days and during that time underwent five surgical procedures including skin grafts. While she was in the hospital the treatment of her burn wounds caused Mrs. Neyer constant and excruciating pain. After leaving the hospital, Mrs. Neyer was cared for at home by a full-time nurse until mid-June 1983. During this time she was totally disabled.

Mrs. Neyer and her husband, Donald L. Neyer, brought suit against the United States under 28 U.S.C. § 2674, and claimed damages to compensate Mrs. Neyer for her medical expenses, pain and suffering, emotional distress, and permanent disabilities. Mr. Neyer sought compensation for loss of consortium. Because the government conceded liability, the sole issue at trial was the amount of damages.

Several physicians, a psychiatrist, and a psychologist testified as to the pain and disability caused by Mrs. Neyer's injuries at the bench trial. Their testimony and that of the plaintiffs caused the trial judge to make the following findings of fact: (1) Almost half of Mrs. Neyer's body was permanently scarred as a result of the burns and skin grafts. (2) Mrs. Neyer suffered a 20% permanent functional disability in the use of her hands. (3) Mrs. Neyer suffered a total disability until mid-June 1983 and made only a slow recovery from that date until the time of trial (August 1986). (4) Mrs. Neyer will suffer early arthritic changes to her joints affected by the burns, including her hands and knees. (5) In addition to her physical disabilities, Mrs. Neyer suffered from chronic post-traumatic stress disorder as a result of the accident, a disorder that the court found would cause Mrs. Neyer permanent psychological side effects. (6) The accident caused and will cause a severe strain on Mr. and Mrs. Neyer's conjugal relationship that has resulted in a loss of consortium, which will continue in the future.

In addition, witnesses for both the government and the Neyers testified regarding a "proper" or a "reasonable" amount of a jury verdict in a case of this kind. The government's witness conducted a statistical regression analysis based on data from jury cases in Cook County, Illinois, and in California. He testified that his analysis showed that a median, or typical, award in a case with the characteristics of Mrs. Neyer's would be approximately $960,000 in 1984 dollars. That government witness also testified that because of a small number of extremely large awards in such cases, the average jury verdict for a case like Mrs. Neyer's would be $1,870,000 represented by 1984 dollars. These figures included no award for the loss of consortium claim. By contrast, the Neyers' witness, an experienced plaintiff's attorney from the Cincinnati area, opined that a jury verdict for plaintiffs' claims would likely reach a minimum amount of $2,200,000.

In closing argument, the government's attorney characterized the case as "a serious burn case" and concluded: "I think a Million Dollars is a good place to start and to make an adjustment as appropriate taking into account some of the factors that are involved in this case...." The district court made an award in the following categories:

| | |
|---|---|
| Pain and suffering— | $1,000,000 |
| Physical and Mental Disability and Future Treatment Thereof— | 250,000 |
| Economic Value of Loss of Homemaker Services— | 94,216 |
| Medical Expenses (Stipulated)— | 88,832 |
| Loss of Consortium— | 250,000 |
| TOTAL: | $1,683,048 [1] |

It is this total award that the government appeals as excessive and unreasonable.

Appellant argues generally that the district court's award is not supported by the record and that it is both excessive and duplicative. Specifically, appellant claims

---

1. The district court has already ruled that it will reduce this total amount by $75,900, the amount paid in settlement to the Neyers by Luminair, Inc., the owner-operator of the airplane.

that the award was excessive in light of what it asserts are awards and settlements in comparable cases. It also asserts that the awards for pain and suffering and for physical and mental disabilities were duplicative, and that the district court's allowance for the loss of economic value of homemaking services and the loss of consortium award were also duplicative.

■ Normally, when elements of damages for personal injuries cannot be precisely calculated, the exact amount of a damages award is left to the discretion of the trier of fact within the framework of allowable elements under the law. That discretion, however, must be "exercised reasonably and within the range of the proofs in the case." *Drayton v. Jiffee Chemical Corp.,* 591 F.2d 352, 366 (6th Cir.1978). "For even the most horrendous injuries, ... the law still applies a rule of just compensation based upon proof establishing those injuries and compensations with reasonable certainty." *Id.* at 362.

Determination of damages in such a situation as this is essentially a question of fact and, therefore, should not be disturbed on appeal unless the determination by the trier of fact is clearly erroneous. *Cf. Rodgers v. Fisher Body Division, General Motors Corp.,* 739 F.2d 1102, 1107 (6th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 821 (1985). We have stated that we will not reverse a trial court's award of damages unless it is "shocking" or manifests "plain injustice," *id.* at 1106, or the damage award is "so grossly excessive as to be clearly erroneous." *Petition of United States Steel Corp.,* 436 F.2d 1256, 1268 (6th Cir.1970), *cert. denied,* 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153 (1971). At the same time, "[a]ll the federal circuits today agree that there should be appellate supervision of the size of jury verdicts." *Rodgers,* 739 F.2d at 1105–06. We are mindful of the caution expressed by another court in considering whether or not to set aside an award of damages as being clearly excessive:

> monetary compensation for pain, disability, distress, and other elements of human injury, ... is inescapably difficult of pre-

cise measurement.... we would on review not hesitate, ... to set aside a verdict which we feel exceeds that which we deem supportable.

*D'Ambra v. United States,* 481 F.2d 14, 21 (1st Cir.), *cert. denied,* 414 U.S. 1075, 94 S.Ct. 592, 38 L.Ed.2d 482 (1973). In *Petition of United States Steel Corp.,* 436 F.2d at 1261, we equated an award deemed "grossly excessive" as one in the nature of a factual determination that is clearly erroneous, where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).

■ Appellant relies particularly on a comparison of the award in *Drayton v. Jiffee Chemical Corp.,* 591 F.2d 352 (6th Cir.1978), *affirming and modifying* 395 F.Supp. 1081 (N.D.Ohio 1975), with the award in this case. *Drayton* involved terrible burns to a very young child, and we wrestled with the pain and suffering award made in *Drayton,* which appellant translates to present value (as of the time of the district court's award in this case) exceeding $767,000. We are not prepared to require an adjustment in a personal injury award based on a perceived inequity or disparity between the award under consideration and another case or cases involving very different circumstances. Appellant cites a number of other cases from other jurisdictions inviting comparisons with awards in other serious or severe burn cases that were settled. We find no realistic analogy between a determination of damages for personal injury after a full scale trial and a *settlement* figure reached in another case without a trial. We do not discount entirely comparisons with other plaintiff verdicts or damage determinations in reviewing on appeal the amount of a damage award, but we are not persuaded in this case by the comparisons submitted by appellant. We observe that it is not possible to obtain uniformity of awards in FTCA cases which may arise in and/or pertain to a citizen of a large urban area, such as Cincinnati, with an award in a purportedly similar case in another locale

such as rural Ohio or Tennessee, where medical costs, standards of living, and perceptions of adequacy of recompense may be substantially different. Neither do we perceive it to be our function here to seek to adjust a damage award in order to attempt to attain "roughly uniform" awards unless the cases considered involve very similar facts and highly comparable circumstances. See, for example, the discussion of damages involving emotional trauma arising out of similar "strip searches" by City of Chicago police in *Joan W. v. City of Chicago*, 771 F.2d 1020 (7th Cir.1985). In *Joan W.*, the court found a particular award for a claim arising out of tortious conduct almost identical to that in previous cases to be "flagrantly extravagant and out of line with the other strip search cases." *Id.* at 1025. Adjustment and reduction of an extravagant award in such a situation is not analogous to the requested reduction in the instant appeal; the government does not claim that this award is "flagrantly extravagant." *Cf. Levka v. City of Chicago*, 748 F.2d 421, 425 (7th Cir.1984) ("One factor we must consider in determining whether to set aside an award is whether the award is out of line compared to other awards *in similar cases.*" (emphasis added)); *Matter of Innovative Const. Systems, Inc.*, 793 F.2d 875, 888 (7th Cir.1986) (damage award in business loss claim reduced because it was "virtually without foundation").

■ There was a foundation, a basis, and evidence adduced in this case that would support the awards made by the district court in the various elements and categories considered. We are left with no strong impression that a mistake has been committed by the trial judge, who carefully considered the evidence and reached a highly fact specific decision on an award for extensive, painful, and permanent injuries. The award is not, in short, excessive to the extent that it is entirely "out of line," or unrelated and disproportionate to the injury received. If we had been cast in the role of triers of fact, we might well have determined that a lesser award was reasonable or fair, but we are not free to judge this award on appeal in such a fashion. At

the same time, we agree with the government that there must be appellate supervision of the amount of jury verdicts and other awards by district courts, and in appropriate cases reductions in awards may well be justified even when the amount in controversy does not necessarily "shock the conscience," but rather leaves us with "the definite and firm conviction that a mistake has been committed" resulting in plain injustice.

■ We have indicated that we affirm the substance of the district court's determination of damages for the reasons indicated. We have concern, however, and harbor some uncertainty with respect to one aspect of the award, that involving the $94,216 amount allocated to Mrs. Neyer for the past and future value of homemaking services. This award was made in addition to her awards for pain and suffering, physical and mental disability, and medical expenses. It was based upon the testimony of Dr. Brookshire regarding the value of perceived needed maid services for forty-eight hours a week, discounted to present value at the time of his testimony. Our concern and uncertainty relate to whether the award for the value of maid services to Mrs. Neyer duplicates, perhaps unwittingly, the award made to Mr. Neyer of $250,-000 for "loss of consortium of his wife's services." The district court did not articulate precisely either what this award for "loss of consortium" entailed or the basis of the award for loss of his wife's services. It may well be, as argued by appellant, that this involves an improper duplication of damages, at least in part, for maid services to replace Mrs. Neyer's services to her husband. There may not be, of course, an allowance to both Mrs. Neyer and to her husband for the same services of this kind and character.

Under the Federal Tort Claims Act, compensatory damages are determined by the law of the state where the tortious act was committed. *Hatahley v. United States*, 351 U.S. 173, 182, 76 S.Ct. 745, 752, 100 L.Ed. 1065 (1956); *see also Douglas v. United States*, 658 F.2d 445, 449 n. 5 (6th Cir.1981). Thus, we must review this ques-

tion concerning the total damage award under Ohio law.

Ohio courts recognize the right of a plaintiff to bring a derivative action based on injuries to a spouse.

The proper proposition of law is simply stated. The wife owes a duty to her husband of consortium which, in general, means conjugal society and assistance, and the common law recognizes the right of a husband to maintain an action against anyone who tortiously impairs the ability of the wife to perform her duty and deprives the husband of his right to such conjugal society and assistance. This right of consortium includes the husband's right to the wife's services, aid, comfort, society and companionship.

*Williams v. Ward*, 18 Ohio App.2d 37, 246 N.E.2d 780, 783 (1969). Although gender bias favoring the husband's right of recovery over the wife's may be found in Ohio decisions, *cf. Smith v. Nicholas Building Co.*, 93 Ohio St. 101, 112 N.E. 204 (1915) (denying wife's cause of action for loss of consortium based on negligent injuring of husband), Ohio courts have held generally that a husband and wife have equal rights, deserving equal protection, in the marriage relationship. *See Clouston v. Remlinger Oldsmobile Cadillac*, 22 Ohio St.2d 65, 258 N.E.2d 230 (1970); *Leffler v. Wiley*, 15 Ohio App.2d 67, 239 N.E.2d 235 (1968).

A lingering bias in the cases regarding the appropriate items of recovery for husbands and wives has not been clearly addressed by the Ohio courts. For example, although a wife is personally entitled to recover earnings lost as a result of job impairment when she works outside the home, *see Hrvatin v. Cleveland Railway Co.*, 69 Ohio App. 499, 44 N.E.2d 283 (1942), the husband is awarded the value of his wife's lost domestic services that a third person must be hired to perform, *cf. McCluggage v. United States*, 296 F.Supp. 485, 488 (S.D.Ohio 1966) (applying Ohio law); *Curry v. Board of Commissioners of Franklin County*, 135 Ohio St. 435, 21 N.E.2d 341 (1939); *Crowe v. Bumford*, 13 Ohio App.2d 208, 235 N.E.2d 247 (Ohio App.1968), *rev'd on other grounds*, 22 Ohio St.2d 78, 258 N.E.2d 110 (1970). By contrast, a husband's future inability to perform household chores is properly an item of recovery for the husband, not the wife. *See Copeland v. Smith Dairy Products Co.*, 288 F.Supp. 904, 905 (N.D.Ohio 1968) (applying Ohio law).

*Copeland* suggested that the Ohio courts reconsider whether a wife should be able to recover for loss of homemaking services on her own behalf. *Id.* at 905–06. No Ohio case, however, appears to adopt the view that a wife may recover the economic value of her lost ability to work in the home. Thus, the award of $94,216 to Mrs. Neyer in the instant case may be subject to question. The district court should in the first instance consider whether it was justified in finding that Ohio law provides a basis for holding that a wife may recover directly for loss of household services on her own behalf.

Even if we were to find that the award to Mrs. Neyer for the loss of homemaking services was proper, however, some uncertainty persists regarding the instant award. Although a claim for loss of services may be brought separately from, *Curry*, 135 Ohio St. 435, 21 N.E.2d 341, or jointly with, *Clouston*, 22 Ohio St.2d 65, 258 N.E.2d 230, a claim for loss of consortium, Ohio courts require a plaintiff seeking recovery for loss of services to present evidence from which the factfinder can assess the value of the services lost. *See Bauer v. Pullman Co.*, 15 Ohio App.2d 69, 239 N.E.2d 226 (1968). In addition, recovery for loss of household services is proper only when the husband has paid third parties to perform those services or is reasonably certain to be required to do so in the future. *See Crowe*, 13 Ohio App.2d 208, 235 N.E.2d 247; *Curry*, 135 Ohio St. 435, 21 N.E.2d 341. Therefore, despite the fact that the Neyers presented the court with evidence regarding the economic value of homemaking services, they failed to show to what extent they had paid for those services in the time between the accident and trial and would pay for them in future, and who paid or would pay for such services. The district court found only that the Neyers em-

ployed a full-time, home-based nurse for approximately four months after Mrs. Neyer returned from the hospital and that after that time neighbors and friends cooked for the Neyers and helped out around the house.

In sum, this appeal presents questions that have no clear cut answers under Ohio law. It is necessary that we remand this element of the award for further consideration and determination by the district court concerning the propriety of the $94,216 award for loss of homemaker services. The balance of the award we have specifically affirmed and is deemed immediately payable.