983 F.2d 1066
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Vivian DOAN, Plaintiff-Appellee,
v.
ASBESTOS CORPORATION, LTD., Defendant-Appellant,
GAF Corporation, Defendant.
 No. 91-4019.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1992.
 
 Before RYAN and SUHRHEINRICH, Circuit Judges, and HIGGINBOTHAM, Senior Circuit Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendant Asbestos Corporation, Ltd. (ACL) seeks review of a judgment rendered after a bench trial in favor of plaintiff Vivian Doan in this asbestos products liability suit. Two issues are presented on appeal: first, whether the district court's findings on product identification, medical causation, and damages were clearly erroneous; and second, whether the district court's awards for damages and loss of consortium were excessive. Finding no error in the district court's rulings, we shall affirm.
 
 I.
 
 2
 Plaintiff Vivian Doan, individually and as executrix of the estate of her husband, Fred Doan, filed a diversity-based products liability claim in the Southern District of Ohio against a number of asbestos suppliers. She based her claims on theories of strict liability and wrongful death for injuries her husband suffered, ultimately causing his death, as a result of his exposure to asbestos during his thirty-seven years of employment with Philip Carey/Celotex Corporation (Celotex). She also filed a loss of consortium claim. By the time the case proceeded to a bench trial, ACL was the only remaining defendant. All other defendants had either settled or had declared bankruptcy.
 
 A. Work History
 
 3
 At trial, the following evidence was adduced mainly through the deposition testimony of Doan taken prior to his death and the deposition and trial testimony of other Celotex employees. Doan worked for Celotex's Lockland facility in Lockland, Ohio for thirty-seven years. Because Celotex produced asbestos products, asbestos fiber was used and processed in the plant during those thirty-seven years.
 
 
 4
 From 1946 to 1960, Doan worked in Celotex's rockwool department where he put rockwool in burlap bags that once contained asbestos. The bags came from two buildings at the Lockland facility where ACL asbestos fibers were used. The bags were not cleaned before Doan and his co-workers used them for bagging the rockwool, so the bagging created asbestos dust, which the workers inhaled. Once a week, Doan unloaded burlap bags, which were full of asbestos, from boxcars in Celotex building # 44. Occasionally, Doan also retrieved empty burlap bags from building # 44 for use in the rockwool department. Both activities created asbestos dust.
 
 
 5
 From 1960 to 1967, Doan worked in Celotex's Carey Temp Department where the company manufactured pipe covering and insulation. For two years, Doan's duties included sawing pipe insulation. According to a co-worker's testimony, because the insulation contained asbestos, the sawing created asbestos dust that became so heavy the sawers were required to go to a window for fresh air every twenty minutes.
 
 
 6
 From 1967 to 1983, Doan worked out of the maintenance department as a pipe-fitter throughout the plant. During this period, he worked primarily in the paper mill where asbestos fiber was mixed to make asbestos paper. His duties included repairing the paper machines in the mill once each week. Inches of dust would pile up in the area of repair behind the machines, and an air hose was used to blow away the dust before repairs began.
 
 
 7
 Doan could not remember or identify the ACL asbestos at the Lockland facility; however, employees of Celotex testified that ACL was one of many asbestos suppliers to the Lockland facility and that its fibers were used in the departments where Doan worked during the time Doan was there. A 1966 purchasing record introduced at trial showed that Celotex purchased ACL asbestos fibers for use in the Carey Temp department. Arthur Mueller, an employee in the research and development department at Celotex, testified that ACL and Johns-Manville fibers were used interchangeably in the pipe insulation. Although Celotex preferred to use the less expensive Carey Canadian asbestos when it was suitable, Howard Finn, a former employee of the purchasing department, testified that ACL was a "significant fiber" at the Lockland facility. It was used in cement products, papers, mill boards, and protective coatings. ACL asbestos was also used in buildings # 44 and # 28, two buildings in which Doan regularly worked during his years at Celotex, and in the paper mill.
 
 B. Medical History
 
 8
 Doan left the company in 1983 after suffering serious back and head injuries in a work-related accident. When Doan left the company, he suffered from a variety of medical problems, including seizures, bronchitis, and emphysema. He smoked at least one pack of cigarettes a day for approximately forty years. He was diagnosed with asbestosis in 1986 and, one year later, with lung cancer. Doan died in August 1988, fifteen months after his lung cancer diagnosis.
 
 
 9
 Asbestosis is an incurable and progressive disease of the lung caused by prolonged exposure to asbestos. The district court made a finding that Doan suffered from asbestosis for fifteen months prior to his death. The court based this finding on Doan's medical records and on the testimony of the medical expert witnesses who testified at trial. The medical reports introduced into evidence indicated that, in April 1986, Drs. Lowry and Kelly diagnosed Doan with asbestosis. Plaintiff's experts, Dr. Dohn, a pulmonary specialist, and Dr. Mendelow, a pathologist, both testified that Doan suffered from asbestosis. They based their diagnoses on Doan's long history of exposure to asbestos and his symptoms of respiratory disease, as well as medical tests and x-ray reports. Medical reports showed that Doan suffered from the presence of "interstitial fibrotic patterns" and asbestos fibers in the lungs, and that he had a history of chronic coughing and shortness of breath, even while physically inactive.
 
 
 10
 Doan's autopsy report revealed findings that were consistent with asbestosis, but the pathologist who performed the autopsy could not identify any asbestos bodies in the lung tissue to confirm whether Doan had asbestosis. Subsequent laboratory tests, performed by Dr. C.K. Kim at the direction of the pathologist, revealed 1,344 asbestos bodies per gram net weight of lung tissue in Doan's lung tissue, a sufficient amount of asbestos bodies to establish occupational exposure to asbestos. Dr. Mendelow, plaintiff's expert, testified that individuals who are not exposed to asbestos normally have only 20 or more asbestos bodies per gram net weight of lung tissue.
 
 
 11
 Dr. Craighead, defendant's medical expert, located only three asbestos bodies in Doan's lung tissue. He testified that this was an insufficient number of asbestos fibers to support a diagnosis of asbestosis. Dr. Craighead testified that a man who smoked was ten times as likely to develop lung cancer, but a man who smoked and experienced prolonged occupational exposure to asbestos was fifty times more likely to develop lung cancer. Nevertheless, Dr. Craighead believed that smoking alone caused Doan's cancer, not the exposure to asbestos, and that cancer caused his death. In contrast, Vivian Doan's expert witnesses, Dr. Dohn and Dr. Mendelow, testified that Doan's occupational exposure to asbestos likely caused his lung cancer.
 
 
 12
 Prior to his cancer diagnosis in 1987, Doan experienced shortness of breath. From April 1987 until his death, Doan was hospitalized several times. He went through chemotherapy, became paralyzed, and his weight dropped from 192 pounds to 50 pounds. His widow testified to the hardships and loss she suffered because of his illness.
 
 
 13
 Based on this evidence, the district court found: 1) that Doan suffered from asbestosis for a period of 15 months; 2) that exposure to ACL's asbestos proximately caused the disease of asbestosis; and 3) that this disease caused him pain and mental anguish. The court thus ruled that ACL was liable on plaintiff's strict liability theory for the asbestosis injury to Doan and awarded $160,000 for Doan's survival claim and $40,000 for his widow's loss of consortium claim. The court found that cancer, not asbestosis, was the substantial cause of Doan's death and, consequently, ruled in favor of ACL on plaintiff's wrongful death claim.
 
 II.
 A.
 
 14
 The Federal Rules of Civil Procedure provide in pertinent part:
 
 
 15
 Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.
 
 
 16
 Fed.R.Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985) (citation omitted).
 
 
 17
 ACL argues that the trial court erred in concluding: 1) that Doan suffered from asbestosis; 2) that Doan was exposed to ACL's asbestos; and 3) that exposure to ACL's asbestos proximately caused Doan's lung disease of asbestosis. We disagree.
 
 
 18
 First, the court did not clearly err when it found that Doan suffered from the disease asbestosis. Whether Doan had asbestosis can be resolved only through review of the medical records and the opinion testimony of the medical experts. ACL's expert physicians testified that although the medical evidence was consistent with asbestosis, the diagnosis could not be confirmed. However, Doan's treating physician diagnosed his asbestosis in 1986, and two medical experts testified that Doan suffered from asbestosis. The trial judge alone had the opportunity to view the expert witnesses, assess their credibility, and draw reasonable inferences from the evidence presented to arrive at his own findings of facts. When the findings are based on credibility determinations, Rule 52(a) requires great deference. Anderson, 470 U.S. at 574. Consequently, we give due regard to the trial judge's finding on this point and find no clear error.
 
 
 19
 Second, the district court did not clearly err in finding that Doan was exposed to ACL's asbestos. Under Ohio strict liability law, Doan must prove, by a preponderance of the evidence, that ACL supplied the asbestos that caused his injury. Goldman v. Johns-Manville Sales Corp., 33 Ohio St.3d 40, 42 (1987). Doan need not provide direct evidence of his exposure to ACL's products. Rather circumstantial evidence alone can establish that he was exposed to ACL asbestos. O'Brien v. National Gypsum Co., 944 F.2d 69, 72 (2d Cir.1991); Roehling v. National Gypsum Co., 786 F.2d 1225, 1228 (4th Cir.1986).
 
 
 20
 ACL argues that Doan established merely the presence of ACL asbestos at the work site and that this was not sufficient to show Doan's exposure to ACL products. Doan established more than the mere presence of ACL asbestos at the work site. He testified by deposition as to his exposure to asbestos fibers while he worked at Celotex, and former Celotex employees testified that ACL asbestos was present in those areas and departments where Doan worked during nearly all his thirty-seven years at the facility. Doan's testimony regarding his exposure to asbestos, along with the testimony of his co-workers that asbestos was the predominantly-used product in the areas where Doan worked, was sufficient to establish that Doan was exposed to ACL asbestos. Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156, 1162-63 (4th Cir.1986).
 
 
 21
 Finally, the district court's finding that ACL asbestos proximately caused Doan's injuries was not clear error. A district court's findings of ultimate fact are normally subject to de novo review. Waxman v. Luna, 881 F.2d 237, 240 (6th Cir.1989). However, even though the issue of causation is an ultimate fact, this court reviews the lower court's determination on causation only for clear error. Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1198 (6th Cir.1988).
 
 
 22
 Under Ohio law, proximate cause is that cause which contributes to produce the result in a natural and continued sequence, without which the result would not have happened. Segal v. Horowitz Bros., 32 Ohio App. 1, 3 (1929).
 
 
 23
 Asbestosis is caused by prolonged exposure to asbestos. At trial, Doan established more than casual or minimum contact with ACL's asbestos. The evidence showed that throughout his thirty-seven years at Celotex, Doan unloaded boxcars of asbestos fibers and asbestos bags, sawed asbestos containing insulation, repaired pipes on machines covered with asbestos dust, and worked in areas where heavy asbestos dust was found. The medical evidence revealed that Doan contracted an asbestos-related disease and that ACL manufactured or sold the asbestos most often used in the areas where Doan worked. From this evidence, the district court could infer that ACL's asbestos was a substantial contributing cause of Doan's injury. See Rocco v. Johns-Manville Corp., 754 F.2d 110 (3d Cir.1985). Consequently, the court did not clearly err in finding that ACL asbestos proximately caused Doan's asbestosis.
 
 B.
 
 24
 The determination of damages is ordinarily a question of fact and should not be disturbed on appeal unless clearly erroneous. This court will not reverse a trial court's award of damages unless it is "shocking," "manifests plain injustice," or is "so grossly excessive as to be clearly erroneous." Neyer v. United States, 845 F.2d 641, 644 (6th Cir.1988) (quoting Petition of United States Steel Corp., 436 F.2d 1256, 1268 (6th Cir.1970), cert. denied, 402 U.S. 987 (1971)). We have recognized that " 'monetary compensation for pain, disability, distress, and other elements of human injury, ... is inescapably difficult of precise measurement ... we would on review not hesitate ... to set aside a verdict which we feel exceeds that which we deem supportable.' " Neyer, 845 F.2d at 644 (citation omitted).
 
 
 25
 An inability to precisely calculate damages will not preclude recovery once the right to damages is determined. Reeser v. Weaver Bros., 54 Ohio App.3d 46, 49 (1989). It is enough if the evidence shows the extent of the damage as a matter of reasonable inference although the results be approximate. Cincinnati Gas and Elec. v. J.T. Lohrer Constr., 9 Ohio Misc.2d 23, 24 (Ohio Com.Pl.1983).
 
 
 26
 The district court awarded damages for the injuries caused by Doan's asbestosis. ACL argues that plaintiff presented no evidence to establish that the asbestosis caused Doan any pain, discomfort, or anxiety, and the injuries he suffered were the direct result of the cancer, not asbestosis.
 
 
 27
 The court specifically stated that the $160,000 damages award and $40,000 loss of consortium award reflected the losses suffered from asbestosis, not from cancer. Asbestosis is a progressive lung disease, involving permanent scarring of the lung, and is caused by prolonged exposure to asbestos fibers. Its damage is permanent and irreversible. Asbestosis can lead to death from respiratory failure, and it can leave a smoker with a higher risk of developing cancer. The trial court, in making its award, considered the nature and extent of the lung injury Doan suffered, as well as the fear and anxiety that accompanied the disease. Under Ohio law, the reasonable fear of cancer is compensable. Lavelle v. Owens-Corning Fiberglas Corp., 30 Ohio Misc.2d 11, 15 (Ohio Com.P.1987).
 
 
 28
 "Normally, when the elements of damages for personal injuries cannot be precisely calculated, the exact amount of a damages award is left to the discretion of the trier of fact...." Neyer, 845 F.2d at 644. The trial judge's award of damages, which was based on the injuries Doan suffered and his wife's loss of consortium, was not shocking, nor did it manifest plain injustice. We do not find the award to be "excessive to the extent that it is entirely 'out of line' or unrelated and disproportionate to the injuries received." Neyer, 845 F.2d at 645.
 
 III.
 
 29
 We therefore AFFIRM the judgment of the district court.
 
 
 30
 SUHRHEINRICH, Circuit Judge, dissenting.
 
 
 31
 Because I disagree with my brethren as to medical causation, I respectfully dissent. The majority defines proximate cause under Ohio law as "that cause which contributes to produce the result in a natural and continued sequence, without which the result would not have happened." (citing Segal v. Horowitz, 32 Ohio App. 1, 3 (1929)). That standard has not been met here, as is evidenced by the district court's own findings of fact as stated on the record:
 
 
 32
 As far as Mr. Doan's concern, using the same analogy I find that the cause of Mr. Doan's cancer was cigarette smoking which he continued up until the day of its diagnosis, in fact as I understand it, until he was unable to smoke anymore. I found that ACL's fiber was insignificant. And inhaling of ACL's fiber in his case was, and the inhaling of asbestos fibers of all kinds in his case was not a substantial competent producing cause of the cancer found in Mr. Doan. I do find that Mr. Doan did have pleural plaques that were a result of and the responsibility of the asbestos fibers. And therefore in my opinion since ACL gave us a substantial number of our fibers that were in the lungs of Mr. Doan that ACL is responsible because I can't separate them out from the other fiber miners, was a competent producing cause of the pleural plaque, and was a substantial producing cause of the asbestosis which I find was in the beginning stages in Mr. Doan. And but for his untimely death from the cancer caused by his cigarette smoking would have been a serious nature of asbestosis is an incureable [sic] and progressive disease. (Emphasis added.)
 
 
 33
 In light of these findings that Doan died of "cancer caused by cigarette smoking," and that the asbestosis, in the "beginning stages," "would have been" serious "but for" the cancer; it simply cannot be said that the purported asbestosis formed a "natural and continued sequence" producing plaintiff's injuries. It is for this reason that I believe that the district court's finding of ultimate fact as to causation was clearly erroneous.
 
 
 
 *
 The Honorable A. Leon Higginbotham, Jr., Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation