**John MEYERS, Plaintiff–Appellee,**

v.

**CITY OF CINCINNATI, Defendant–Appellant.**

No. 92–3258.

United States Court of Appeals, Sixth Circuit.

Argued April 29, 1993.

Decided Jan. 21, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied March 31, 1994.*

* Suhrheinrich, Circuit Judge, would grant rehearing for the reasons stated in his dissent.

William S. Wyler (argued and briefed), Donna M. Bergmann (briefed) and Donald B.

Hordes (briefed), Schwartz, Manes & Ruby, Cincinnati, OH, for plaintiff-appellee.

James F. McCarthy, III (argued and briefed), City Solicitor's Office for the City of Cincinnati, Cincinnati, OH, for defendant-appellant.

Before: MERRITT, Chief Judge; and KEITH and SUHRHEINRICH, Circuit Judges.

MERRITT, Chief Judge.

This is an appeal from a judgment for the plaintiff in a civil rights case brought under 42 U.S.C. § 1983. On the recommendation of Cincinnati's Director of Safety, the City Manager forced the retirement of the plaintiff, Mr. John Meyers, a 30-year official of the fire department. The Civil Service Commission ruled against Meyers' appeal and left the decision of the City Manager in effect. This court has previously held that city officials forced Meyers to retire based upon disapproval of statements made by Meyers which were protected by the First Amendment. Thus we have held that the officials effectively discharged Meyers in violation of the First Amendment. We do not revisit that decision here. The essential facts on which our previous decision was based are set out in *Meyers v. City of Cincinnati,* 934 F.2d 726 (6th Cir.1991). We remanded the case for further proceedings including resolution of the issues concerning the City's liability under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which permits municipal liability under § 1983 for damages arising from the application of unconstitutional municipal policies and customs but not for employee conduct on a theory of *respondeat superior.*

District Judge Rubin concluded that the City was liable under *Monell,* and awarded plaintiff $393,445 in damages consisting of $368,445 for loss of pay and $25,000 for mental anguish, humiliation, and loss of reputation. The City of Cincinnati contends that it is not liable under *Monell* because city officials were not following a "custom or policy" within the meaning of *Monell,* and plaintiff's constructive discharge was not pursuant to a

"final policy" attributable to the City. The City also contends that the damage award is excessive. We agree with Judge Rubin that the decision to engage in conduct in violation of the First Amendment was made or approved by a final policy-maker of the City of Cincinnati and that this conduct is sufficient to trigger municipal liability under *Monell.* We also agree with Judge Rubin in his award of damages and hence affirm the judgment below.

■ We address first the City's *Monell* defense. In *Monell,* the Supreme Court established that § 1983 applies to municipalities and local governments. *Monell,* 436 U.S. at 690, 98 S.Ct. at 2035. A municipality is not, however, liable for every misdeed of its employees and agents. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–38.

In 1987, Cincinnati's Fire Chief instructed Meyers, the Assistant Fire Chief in charge of personnel, to investigate distribution of "unauthorized literature" to potential fire department recruits. This "literature" turned out to be business cards from PREP, Inc., an organization funded by the Department of Labor to help minorities compete for jobs. Meyers contacted PREP and spoke to Daisy Foster and Lucy Green. Foster and Green interpreted Meyers' questions and statements to be criticism of affirmative action and complained to city officials. These officials investigated, held a disciplinary hearing, and decided to demote Meyers to district chief. The final decision was made by the City's Director of Safety and approved by the City's highest executive officer, the City Manager. Rather than accept the demotion and lose substantial retirement benefits, Meyers agreed to retire at the rank of assistant chief. Meyers then petitioned the municipal Civil Service Commission to restore him to his position. The Commission ruled that Meyers had voluntarily retired, a decision contrary to our previous decision as a matter of federal law that Meyers had been forced out in violation of the First Amendment.

■ The City argues that it is not liable under *Monell* because Meyers was not discharged pursuant to a formal city "policy." The City states, as though it is dispositive, that "[t]here is no evidence of any policy or custom of disciplining municipal employees for exercising their right of free speech. There is no evidence that any final policy-making official ever promulgated a policy of disciplining City employees for exercising their rights of free speech." Petitioner's Brief at 17. No municipal official in his right mind would advocate such a general policy. The City is not accused of routinely disciplining employees for exercising First Amendment rights or of having an officially promulgated policy to that effect. Its highest officials—the Safety Director, the City Manager and the Civil Service Commission—acted together to discipline John Meyers for exercising his constitutional rights in this one case.

■ The requirement that a municipality's wrongful actions be a "policy" is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials. It is meant to distinguish those injuries for which "the government as an entity is responsible under § 1983," *Monell,* 436 U.S. at 694, 98 S.Ct. at 2038, from those injuries for which the government should not be held accountable. "*Monell* is a case about responsibility." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478, 106 S.Ct. 1292, 1297, 89 L.Ed.2d 452 (1986). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479–80, 106 S.Ct. at 1298.

The City of Cincinnati's argument is that even if it did violate Meyers' First Amendment rights, it did not do so pursuant to a general rule disfavoring free speech. In *Pembaur,* the Supreme Court addressed and rejected the same argument, holding that "it is plain that municipal liability may be imposed for a single decision by municipal policy-makers under appropriate circumstances."

*Id.* at 480, 106 S.Ct. at 1298.[1] The City's contention that Meyers' constructive discharge was an isolated incident does not, therefore, save the City from liability. If the decision to punish him for exercising his constitutional rights was made by the "government's authorized decisionmakers" the City is responsible.

■ The City also relies on *Monell* to argue that municipal liability is precluded by the existence of a formal process of appeal to the Civil Service Commission. The Director of Safety and the City Manager are not final policy-making officials, the City contends, because employment decisions are reviewable by the Commission. Cincinnati's Charter, Article IV, § 1, makes the City Manager "chief executive and administrative officer of the City." The City Manager is authorized to "dismiss, suspend and discipline all officers and employees in the administrative service under the control of the City Manager." Administrative Code of the City of Cincinnati, Article II, § 1. The City Manager's employee disciplinary actions are reviewable by the Civil Service Commission. Upon the suspension, demotion, or removal of a chief of the Fire Department, the affected employee may file an appeal with the Commission. R.C. 124.34. The Commission is then *required* to hear the appeal within thirty days of its filing and may "affirm, disaffirm, or modify the judgment of the appointing authority." *Id.*

The Commission's review does not preclude liability; on the contrary, the Commission's denial of Meyers' appeal is the ultimate source of liability in this case:

When a subordinate's decision is subject to review by the municipality's authorized

policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Meyers filed a timely appeal with the Commission, and the Commission ruled against him on the grounds that he had "voluntarily" retired, a substantive determination that he was not coerced which we found to be untrue as a matter of federal law. This decision was final and marked the end of the City's appeal process for Meyers. A municipality may not escape *Monell* liability, as our dissenting colleague argues, by simply delegating decisionmaking authority to a subordinate official and thereafter studiously refusing to review his unconstitutional action on the merits.

That the Commission reached a final conclusion distinguishes this case from *Praprotnik,* in which the local Civil Service Commission stayed any action on the plaintiff's complaint pending the outcome of federal litigation on the matter. It is clear that the decision in *Praprotnik* turns on the fact that in that case the plaintiff submitted no evidence to show that the Commission had ever "so much as hinted that the unconstitutional acts of lower officials were permissible." *Id.,* 485 U.S. at 128, 108 S.Ct. at 927. In *Praprotnik* the Commission had never come down with a final order, as in this case. After the Supreme Court had ruled and the federal court litigation was over, the plaintiff in *Praprotnik* could return to the local Civil Service Commission and ask that it lift its

---

1. The Court explains:

To be sure, "official policy" often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.... However, as in *Owen [v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)] and *Newport [v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)], a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt

that particular course of action is properly made by that government's authorized decision-makers, it surely represents an act of official government "policy" as that term is commonly understood. *More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether the action is to be taken only once or to be taken repeatedly.* To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983. *Id.* 475 U.S. at 480–81, 106 S.Ct. at 1299 (footnote omitted) (emphasis added).

stay and proceed to the merits of the case. If the Commission had then ratified the violation of plaintiff's constitutional rights, plaintiff would be free to go back to federal court since the city's top officials for purposes of *Monell* were now implicated in the violation. In the instant case, Meyers has supplied ample evidence to show that the Civil Service Commission ratified the unconstitutional acts of the City Manager. Unlike the Commission in *Praprotnik*, the Commission here did not stay the proceedings, giving Meyers an opportunity to return. It affirmatively approved and ratified the action of the Director of Safety and the City Manager which deprived Meyers of his rights of free speech. The dissenting opinion fails to take into account or even mention this significant distinction between this case and *Praprotnik*.

As our previous decision makes clear, the three, acting in combination, effectively forced Meyers out of his job in retaliation for his statements and then sought to have it appear that he "voluntarily" retired. The Civil Service Commission issued a final determination, actively participated in the constitutional violation and finalized Meyers' deprivation. Defendant's reliance on *Praprotnik* is therefore misplaced.

\*       \*       \*       \*       \*       \*

The City also challenges the amount of damages awarded by the district court as excessive. The court awarded $368,445 for lost pay and lost benefits, and $25,000 for mental anguish, humiliation, and lost reputation, for a total amount of $393,445. The City claims that Meyers is not entitled to the full amount awarded for lost wages and benefits because he failed to mitigate his damages by seeking alternative employment. It also challenges the $25,000 award, arguing that "there is no evidence of mental anguish, harm or injury."

In a § 1983 case the plaintiff has a duty to mitigate damages. *See Rolfe v. County Bd. of Educ.*, 391 F.2d 77, 81 (6th Cir.1968). In this case each party contends that the other has the burden of proof on the issue of mitigation, and both parties rely upon *Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614 (6th Cir.1983). *Rasimas* unequivocally establishes that once

the plaintiff has presented evidence of damages, the defendant has the burden of establishing a failure to properly mitigate damages. *Id.* at 623–24. To satisfy this burden the defendant must establish that substantially equivalent positions were available and that the plaintiff failed to exercise reasonable care and diligence in seeking those positions. *Id.* at 624. The City presented no evidence that substantially equivalent positions were available to Meyers and has not, therefore, met its burden of establishing failure to mitigate.

The City has also failed to demonstrate that the damage award is excessive or unsupported by the evidence. The damages present a question of fact subject to review under the clearly erroneous standard. *Neyer v. United States*, 845 F.2d 641 (6th Cir. 1988). An award of damages by the trial court will not be overturned as excessive unless it manifests plain injustice, or is so grossly excessive as to be clearly erroneous. *Id.* The district court found that the City's wrongful actions caused Meyers mental anguish, humiliation, and loss of reputation, and awarded $25,000 in compensatory damages. The court found that these damages were caused in part by the substantial unfavorable publicity surrounding Meyers' constructive discharge. Meyers' psychological injuries had physical effects: he lost 10 pounds and suffered from insomnia. He also experienced stomach problems for which he was prescribed medication. We find that the district court's award of compensatory damages is supported by the evidence and is not so grossly excessive as to be clearly erroneous.

For the foregoing reasons we AFFIRM the judgment of the district court.

SUHRHEINRICH, Circuit Judge, dissenting.

The majority affirms the liability of the City of Cincinnati based, in my view, upon a single unconstitutional act committed by two municipal employees not vested with the authority under state law to establish policy with respect to the action taken. This holding, I believe, is contrary to Supreme Court

precedent and, therefore, I respectfully dissent.[1]

## I.

The majority states the following:

The City is not accused of routinely disciplining employees for exercising First Amendment rights *or of having an officially promulgated policy to the effect.* Its highest officials—the Safety Director, the City Manager and the Civil Service Commission—acted together to discipline John Meyers for exercising his constitutional rights *in this one case.*

Maj. Op. at 1117 (emphasis added). Thus, it would seem, that the majority imposes liability solely upon the *act* of disciplining Meyers, rather than any *policy* of the city. In my view, such a result is clearly precluded by *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978) (city not liable under respondeat superior; only liable where an injury was inflicted by the municipality's "lawmakers or those whose edicts or acts may fairly be said to represent official policy").

To avoid this obvious bar to liability, plaintiff asserts, and the majority agrees, that the act of firing Meyers was, in itself, the establishment of a City policy. This argument wears revealingly thin, however, when either the plaintiff or the majority is asked to articulate exactly what the "policy" is which underlies the City's liability. Plaintiff argues that he was fired pursuant to a policy "to promote affirmative action at all costs and to avoid any appearance of less than full commitment to affirmative action within the City." App.Br. at 5. At argument, plaintiff stated that the City's policy was, simply, to "protect its image." Plaintiff fails to demonstrate that either asserted "policy" is unconstitutional.

At argument, Judge Merritt sought to rehabilitate plaintiff's argument by suggesting that the City's policy was "to fire employees for making statements which are unpopular for some segment of Cincinnati." Even this "policy" has, apparently, proven an untenable basis for liability because the majority's opinion now studiously avoids *any* attempt to spell out the policy for which the City is being held liable.

## II.

In an area of the law which is, admittedly, not yet settled, certain principles have been adopted by the Supreme Court which should guide the resolution of this case. First, municipal liability under 42 U.S.C. § 1983, must always and only be a product of the city's own acts; thus, an unconstitutional policy of the city must be identified as having been the moving force of the plaintiff's constitutional deprivation. *See Monell,* 436 U.S. at 694, 98 S.Ct. at 2037. Second, the Supreme Court has identified three means by which a plaintiff may establish such a policy: (1) an officially promulgated *policy* as that term is commonly understood, *i.e.,* a general statement adopted by the city's lawmakers with an intention of governing future conduct, *id.* at 690, 98 S.Ct. at 2035–36; (2) a pervasive *custom or practice,* of which the city lawmakers know or should know, *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); and (3) a *single act* taken by a city employee who, as a matter of state law, has final policymaking authority with respect to the area in which the action was taken. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986).

Plaintiff does not argue, and it does not appear, that either of the first two categories are applicable to this case. Instead, plaintiff contends that defendants Rager and Johnson, the city officials who were involved in disciplining Meyers, committed a single act

---

1. The majority states that the district court "concluded that the City was liable under *Monell....*" Maj. Op. at 1116. I disagree. The district court's order plainly states that, in the district court's opinion, this issue was "foreclosed" by an earlier opinion of this court in this case. In this, the district court was clearly wrong, as the language of the remand in *Meyers v. City of Cincinnati,* 934 F.2d 726, 732 (6th Cir.1991) (*Meyers I*), shows. Thus, the majority "affirms" a decision the district court did not make. On this basis, alone, affirmance is improper.

which gives rise to the City's liability under the third category above. This argument, in my view, is precluded by *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion) (city not liable for isolated unconstitutional act unless made by one with "final policy-making authority" under state law).

The majority, recognizing that Rager and Johnson are not, in fact, vested by state law with final policymaking authority regarding personnel disciplinary actions,[2] invokes "the [Civil Service] Commission's denial of Meyers' appeal [as] the ultimate source of liability in this case." Maj.Op. at 1118. I agree with the majority that, "*[i]f the authorized policymakers approve[d] a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.*" Maj.Op. at 1118 (*quoting Paprotnik*, 485 U.S. at 127, 108 S.Ct. at 926) (emphasis mine).

Unlike the majority, however, I find no evidence to support its statement that the Civil Service Commission "affirmatively approved" Rager's and Johnson's acts in this case, let alone that the Commission "ratified" the unconstitutional basis for those acts. It is undisputed that the Commission refused Meyers' appeal on the grounds that he freely chose to retire and that only "suspensions, demotions and removals" were appealable. Even if the Commission's refusal to consider the merits of Meyers' case were considered, in some sense, an approval of the discipline, there is *no* evidence from which to infer that the Commission "approved" the unconstitutional "basis" for the decision as the majority's own quote from *Paprotnik* illustrates is clearly required.

This case is remarkably similar to *Paprotnik* and I conclude that the same result should obtain. In *Paprotnik*, as here, the plaintiff alleged that the city, his employer, had transferred him in retaliation for exercising his First Amendment rights. *Paprotnik*, 485 U.S. at 116, 108 S.Ct. at 920. There, as here, the Civil Service Commission, as final

policymaker under state law, refused to consider plaintiff's appeal because it did not fall within the grounds for which appeals are provided. *Id.* Without a decision from a "final policymaker," approving the action *and* the unconstitutional basis for it, the Court's plurality held that there was no basis for liability under *Monell*.

> [T]he mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to delegation of policy-making authority, especially where (as here) the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale. In such circumstances, the purposes of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy.

*Id.* at 130, 108 S.Ct. at 928. *See, also, Pembaur*, 475 U.S. at 483 n. 12, 106 S.Ct. at 1300 n. 12 (plurality opinion) (noting that even the unconstitutional exercise of discretion in implementing personnel policy will not give rise to municipal liability where authority to make personnel policy rests · elsewhere); *Tuttle*, 471 U.S. at 823–24, 105 S.Ct. at 2436 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

Based upon *Paprotnik*, I would hold that plaintiff has not established facts sufficient to impose liability on the City for the unconstitutional acts of its employees.

### III.

In *Meyers I*, we held that state law provided a remedy for the Commission's failure to consider Meyers' appeal. *Meyers I*, 934 F.2d at 731. Implicit in that holding is our understanding that the state courts could, if relief were merited, have afforded Meyers either complete relief by reinstating him or, at a minimum, procedural relief by ordering the

---

2. As the majority notes, Ohio Rev.Code Ann. §§ 124.34, 124.40, vest the final policymaking authority for personnel actions in the City's Civil Service Commission. Certainly the City's Safety Director and City Manager have discretion in recommending and imposing discipline in individual cases, but each case is ultimately appealable to the Civil Service Commission.

Commission to consider his appeal. *Id.* (Ohio law provides a "complete judicial corrective process fully adequate to review" Meyers' claims). In the latter circumstance, even if the Commission had ruled against him, Meyers would have had a decision from the body with "final policymaking authority" upon which he could properly attempt to impose liability under 42 U.S.C. § 1983. *See* Maj.Op. at 1118–19 (recognizing this procedure in the context of *Paprotnik* without attempting to apply it the present case). Meyers' failure to pursue this state remedy, in my opinion, should be as fatal to his present claim as it was to his procedural due process claim.

There is no question in this case that Meyers suffered a constitutional deprivation at the hands of City employees. Such is the *beginning* of the inquiry under 42 U.S.C. § 1983, however, not the *end* of the inquiry. The majority holds the City liable for a policy it cannot identify and imputes the rogue actions of Rager and Johnson to the City without justification or basis in state law. Judgment should be entered for the City and this case dismissed.