983 F.2d 1071
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary WENDT, Individually and as Executrix of the estate of
Carl Wendt, Plaintiff-Appellant,
v.
ASBESTOS CORP. LTD., Defendant-Appellee.
 No. 92-3038.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1992.
 
 Before KEITH, NATHANIEL R. JONES and BOGGS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Asbestos Corporation Limited (ACL) appeals from the district court's ruling that Mr. Carl F. Wendt's cancer, asbestosis, and death were caused by exposure to asbestos manufactured by ACL. On appeal, ACL challenges the district court's adverse findings of medical causation and product identification. In addition, ACL alleges that the district court's award of damages for the survival claim, Mrs. Wendt's loss of consortium claim, and the wrongful death claim are shocking, and demonstrate plain injustice. We affirm.
 
 
 2
 * A
 
 
 3
 Mr. Wendt worked at the Lockland plant of Celotex for forty-five years, beginning in 1940 at age nineteen and retiring in 1984 at age sixty-three. He worked exclusively in the Asbestos Cement Division located in Building 30 and Building 44. This division manufactured a variety of cement products that contained asbestos, including corrugated board, wallboard, and shingles. Mr. Wendt's assigned positions included wallboard shearer operator, saw helper, and laminator helper. At trial, co-workers testified that Mr. Wendt sawed, cut, and crated asbestos in a dusty environment. In the early 1970's, Celotex stopped making products that contained asbestos in these buildings.
 
 
 4
 Celotex's records show that ACL's fibers were used in large quantities at the Lockland facility. At trial, three co-workers identified "Kings" as one of the three principal suppliers of asbestos fibers to Building 44. Kings was the name of one of ACL's mills. Mr. Arthur T. Mueller, who held a management position with Celotex in its research and development department, testified that ACL was one of two principal suppliers to the Asbestos Cement Division where Mr. Wendt worked. Mr. Howard Finn, who worked for Celotex as both a chemist and a purchaser, testified that ACL's asbestos fibers were used in Building 44.
 
 
 5
 In 1983, Dr. Joe Hackworth first suspected that Mr. Wendt had asbestosis. This diagnosis was not officially confirmed, however, until September 25, 1986. In March 1987, Mr. Wendt started experiencing acute pain in the right side of his chest. On April 8, 1987, doctors found lung cancer during surgery. Over the next four months, Mr. Wendt's health deteriorated rapidly. He experienced severe pain and discomfort and was no longer able to participate in activities with Mrs. Wendt. Mrs. Wendt took care of her husband until his death on August 1, 1987.
 
 
 6
 At the time of his death, Mr. Wendt was receiving social security benefits of $600 a month and a union pension of $302 a month. After his death, the social security payments stopped, and Mrs. Wendt only received $151 a month from the pension fund. Two years later, Mrs. Wendt began receiving social security income in the form of a widow's pension benefit.
 
 B
 
 7
 On August 21, 1986, Mr. Wendt and his wife, Mary V. Wendt, filed a personal injury action against ACL and other mining companies for injuries they suffered as a result of Mr. Wendt's exposure to asbestos fibers during his employment at Celotex Corporation's facility in Lockland, Ohio. After Mr. Wendt's death of lung cancer, Mrs. Wendt filed an amended complaint substituting herself as plaintiff for her decedent husband and adding a claim for wrongful death due to exposure to asbestos fibers.
 
 
 8
 At the time of trial, ACL was the only remaining defendant. The only issues presented at trial concerned medical causation, product identification, and damages. After a bench trial, the district court entered judgment for the plaintiff on March 31, 1991. The court found that exposure to asbestos fibers from ACL's products was the proximate cause of Mr. Wendt's severe asbestosis and of the lung cancer that caused his death. The court awarded Mr. Wendt's estate $244,205 as compensation for pain and suffering related to asbestosis and lung cancer and for medical bills. The court awarded Mrs. Wendt $40,000 for her loss of consortium claim. Finally, the court awarded Mrs. Wendt $254,000 for the wrongful death claim, including recovery for economic loss, loss of services, and loss of companionship over the duration of Mr. Wendt's remaining life expectancy of at least eight years.
 
 II
 
 9
 ACL challenges the district court's findings of proximate cause. Proximate cause is a factual issue under Ohio law. Grover Hill Grain Co. v. Baugham-Oster, Inc., 728 F.2d 784 (6th Cir.1984). Federal Rule of Civil Procedure 52(a) sets forth the standard of review for the district court's findings of proximate cause: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given the opportunity of the trial court to judge the credibility of the witnesses." Therefore, we must not set aside the district court's findings of causation unless those findings are clearly erroneous.
 
 
 10
 * First, ACL contends that the district court's finding that exposure to asbestos was a proximate cause of Mr. Wendt's lung cancer is clearly erroneous because Mr. Wendt failed to produce evidence eliminating cigarette smoking as a proximate cause. In In re Bendectin Litigation, 857 F.2d 290 (6th Cir.), cert. denied, 488 U.S. 1006 (1988), this court discussed in detail the "substantial factor" test that is appropriate in this case. Under this test, when there are two or more possible causes of an injury, the plaintiff must first show that the tortfeasor's negligence could have caused the damage in the absence of the other possible causes. Id. at 310. If some other act unites with the tortfeasor's act and they both act as causes of the injury, both are proximate causes. Id.
 
 
 11
 ACL provides no evidence to undermine the district court's finding that asbestos exposure was a proximate cause of Mr. Wendt's injury. Instead, ACL catalogs evidence that cigarette smoking also contributed to the lung cancer. Mr. Wendt smoked cigarettes from 1940 until 1978, and all expert doctors agreed that the smoking contributed to Mr. Wendt's lung cancer. However, the issue before the district court was not whether cigarette smoking was a proximate cause of Mr. Wendt's lung cancer, but whether asbestos exposure was also a proximate cause. Under Ohio law, both could be proximate causes. Norris v. Babcock & Wilcox Co., 48 Ohio App.3d 66, 67, 548 N.E.2d 304, 305 (1988) (court found sufficient evidence to support finding that asbestos exposure caused larynx cancer in plaintiff who smoked cigarettes). No physician testified that cigarette smoking was the sole cause of Mr. Wendt's lung cancer. To the contrary, all of the physicians who testified, including the defendant's witness, agreed that asbestos exposure greatly increases the risk for developing lung cancer. Therefore, the district court's finding of medical causation is not clearly erroneous.
 
 B
 
 12
 Under Ohio law, Mrs. Wendt must prove not only that Mr. Wendt's lung cancer was caused by asbestos exposure but that it was caused specifically by exposure to asbestos fibers sold by ACL. Goldman v. Johns-Manville Sales Corp., 33 Ohio St.3d 40, 514 N.E.2d 691, 693 (1987). ACL contends that Mrs. Wendt failed to identify ACL's products as the specific cause of Mr. Wendt's asbestosis and cancer. However, ample evidence supports the district court's findings of product identification. Mr. John Gordon, who worked in Building 44 for twenty-three years, testified that ACL was one of the three principal suppliers of asbestos to that building. Mr. Frederick Taylor, who worked at Celotex with Mr. Wendt, testified that he remembered unloading bags of fiber from "Kings" in Building 44. Mr. Arthur T. Mueller, a manager in Celotex's research and development department, testified that ACL was one of the two principal suppliers for the Asbestos Cement Division for the entire time that Mr. Wendt worked with asbestos. Mr. Howard W. Finn, who worked at Celotex from 1948 until 1983, testified that fibers from ACL were used in Building 44. Furthermore, several witnesses testified, and ACL does not dispute, that Mr. Wendt worked with asbestos in Buildings 30 and 44 in a dusty environment. Therefore, we will not disturb the district court's finding that Mr. Wendt's cancer and asbestosis were caused by exposure to asbestos fibers supplied by ACL.
 
 III
 
 13
 In addition, ACL challenges the amount of the district court's award of damages for the survival claim, Mrs. Wendt's loss of consortium claim, and the wrongful death claim. An award of damages should not be disturbed on appeal unless the reviewing court finds "it is 'shocking' or manifests 'plain injustice' or the damage award is 'so grossly excessive as to be clearly erroneous.' " Neyer v. United States, 845 F.2d 641, 644 (6th Cir.1988). This Circuit, however, has recognized that "[a]ll the federal circuits today agree that there should be appellate supervision of the size of jury verdicts." Rodgers v. Fisher Body Division, General Motors Corp., 739 F.2d 1102, 1105-06 (6th Cir.1984). We have reviewed the district court's calculations and conclude that they neither manifest a plain injustice nor are so grossly excessive as to be clearly erroneous.
 
 
 14
 The district court awarded $244,205 to the estate of Mr. Wendt, including $44,205 for proven medical bills, $40,000 for pain and suffering of lung cancer, and $160,000 for the pain and suffering of asbestosis. ACL argues that the damages awarded for pain and suffering from asbestosis are clearly excessive because no expert testimony supported Mr. Wendt's subjective complaints of pain and suffering, citing Roberts v. Mutual Manufacturing & Supply Co., 16 Ohio App.3d 324, 475 N.W.2d 797 (1984). Roberts, however, stands for the proposition that "there must be expert evidence as to future pain and suffering or permanency where the injury is subjective in character." Id. at 799 (emphasis added). ACL's argument is irrelevant. Mr. Wendt is deceased, and the district court therefore did not award any damages for future pain and suffering. ACL also argues that no evidence was presented that the asbestosis even caused Mr. Wendt pain, discomfort, or anxiety and that the court failed to consider pain and suffering from his heart condition. We find that the district court's determination is supported by the testimony from Mr. Wendt's treating physicians, Mrs. Wendt, and Mr. Wendt's medical records, all of which provide evidence of the pain and suffering caused by his asbestosis.
 
 
 15
 Next, ACL argues that the $40,000 awarded to Mrs. Wendt for her loss of consortium during the final four months of Mr. Wendt's life is clearly excessive. A claim for loss of consortium involves a myriad of considerations that are both abstract and highly personal, including loss of support, services, love, companionship, affection, society, and sexual relations. Thompson v. National R.R. Passenger Corp., 621 F.2d 814, 826 (6th Cir.), cert. denied, 449 U.S. 1035 (1980). Calculating a pecuniary value for such a subjective loss is manifestly difficult; declaring that value to be excessive or shocking to the conscious is even more difficult. ACL makes no claim that improper evidence was admitted or that the district court's analysis was tainted by bias or prejudice. Although we agree with ACL that the district court was undoubtedly sympathetic to Mrs. Wendt, the record does not support ACL's contention that the district court's award was based on his sympathy alone and not based on Mrs. Wendt's proof of the nature and extent of her loss. The district court explained the basis for the amount of the award and indicated the evidence supporting the amount. Therefore, we hold that the award of $40,000, or $10,000 per month, as compensation for Mrs. Wendt's loss of consortium was not clearly excessive.
 
 
 16
 Finally, ACL challenges the district court's award of $250,000 to Mrs. Wendt for the wrongful death claim, including compensation for loss of services, income, and society. Loss of income was proven to be approximately $13,500. Loss of services, when calculated at an hour or two a day over eight years at a minimum wage rate, is approximately $15,000. Thus, the district court awarded $221,500 for loss of society, including "[c]ompanionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, [and] instruction ..." This is equal to roughly $30,000 a year for each year of Mr. Wendt's eight-year life expectancy. ACL bases its argument that this award is clearly excessive on Urseth v. City of Dayton, 680 F.Supp. 1150 (S.D.Ohio.1987), in which a district court ruled that the jury's damages award of $3,500,000 was beyond the maximum amount the jury could reasonably award. In that case, however, the court awarded the widow $300,000 for loss of society and $600,000 for mental anguish, or a total of approximately $45,000 per year for each year of that decedent's twenty-year life expectancy. Mrs. Wendt received $30,000 per year. We hold that this award is not clearly erroneous.
 
 IV
 
 17
 For the foregoing reasons, we AFFIRM the district court's judgment.