16 F.3d 1218
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 David L. CARPENTER; Doris G. Carpenter, Plaintiffs-Appellees,
v.
GAF CORPORATION; Carey Canada, Inc.; the Celotex
Corporation, Defendants-Appellants,
Nicolet, Inc., et al., Defendants.
 Nos. 90-3460, 90-3461.
 United States Court of Appeals, Sixth Circuit.
 Feb. 15, 1994.
 
 Before: BOGGS and SUHRHEINRICH, Circuit Judges; BERTELSMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Defendants Carey Canada, Inc., the Celotex Corporation ("Celotex") and GAF Corporation ("GAF") appeal an adverse jury verdict in the consolidated trials of two former Celotex employees for injuries occurring as a result of exposure to asbestos during the course of their employment. The jury awarded Carpenter $498,750 in compensatory damages and his wife $100,000 for her loss of consortium. The jury awarded Taylor $540,000 in compensatory damages and $193,000 for lost wages. Taylor's wife received $100,000 for loss of consortium. The court reduced the awards by the amount of settlements received from other defendants and entered judgment.
 
 
 2
 Defendants challenge: (1) the consolidation of the cases for trial; (2) the admission of the testimony of a medical expert, Dr. Schepers, regarding an asbestos-related disease from which neither plaintiff suffered; (3) the admission of medical testimony by Dr. Kelly that plaintiffs would die at earlier ages because of lung disease; (4) the admission of testimony regarding Taylor's lost wage claim; and (5) the denial of the defendants' motion for new trial.
 
 
 3
 We affirm the judgments in plaintiffs' favor.
 
 I.
 
 4
 Plaintiff William David Carpenter worked at the Celotex Lockland facility from 1952 until 1974, in various positions, many of which involved working with bags of asbestos fiber. Carpenter experienced shortness of breath as early as the late 1960s and was diagnosed with cardiac arrhythmia. Eventually, he was found to be totally disabled and has not worked since that time.
 
 
 5
 Plaintiff William Taylor worked at the Celotex Lockland facility from 1950 until 1986, primarily as an electrician. His work involved handling bags of asbestos fiber. He first experienced heart trouble in 1976, and had bypass surgery in 1978. He had a second bypass surgery in January of 1987.
 
 II.
 
 6
 Consolidation of cases is governed by Rule 42(a), Fed.R.Civ.P., which authorizes a federal court to order a joint hearing or trial when common questions of law or fact are pending before the court. Cases should be consolidated if the risks of prejudice and confusion are outweighed by other factors including "the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources...." Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir.1985) (quoting Arnold v. Eastern Air Lines, Inc., 681 F.2d 186, 193 (4th Cir.1982), cert. denied, 464 U.S. 1040 (1984)). The trial court's discretion in deciding whether to consolidate actions will be upheld unless it constitutes a "clear abuse of discretion." Hendrix, 776 F.2d at 1495; Stemler v. Burke, 344 F.2d 393, 396 (6th Cir.1965).
 
 
 7
 Here, despite common issues of fact and law connecting the two cases, including employment during overlapping years at the same industrial site, similar causes of action involving the same defendants claiming the same defenses, and common witnesses and testimony, defendants contend that consolidation gave the jury the mistaken impression of a greater incidence of asbestos-related injury. Further, defendants argue that additional prejudice resulted because both plaintiffs had severe heart disease which confused the jury into thinking that heart disease was linked to asbestos exposure. In support, defendants point to the similarities of the verdicts for pain, suffering and disability which they contend indicates a spillover effect from Taylor's case to Carpenter's.
 
 
 8
 We are not persuaded. The consolidation of two cases creates no prejudicial impression as to the extensiveness of asbestos-related injuries and the straightforwardness of the issues belies jury confusion. Finally, defendants had the opportunity to cross-examine medical experts to clarify any testimony as to the cause of the plaintiffs' medical conditions, thereby ameliorating potential confusion. Further, the commonality of issues and facts, the number of asbestos personal injury actions pending and the length of asbestos trials provide satisfactory rationale for consolidation. See, e.g., Hendrix, 776 F.2d at 1497. Accordingly, we find that the trial court did not abuse its discretion in consolidating these cases.
 
 III.
 
 9
 Both the second and third issue concern the admission of expert testimony. Admission of expert testimony under Rule 702, Fed.R.Evid., requires: "(1) a qualified expert; (2) testifying on a proper subject; (3) in conformity to a generally accepted explanatory theory; (4) the probative value of which outweighs any prejudicial effect." United States v. Kozminski, 821 F.2d 1186, 1194 (6th Cir.), aff'd, 487 U.S. 931 (1988). Expert testimony which tends to unfairly prejudice the opposing party is admissible only if it is highly probative of the issues in the case. In re Bendectin Litig., 857 F.2d 290 (6th Cir.1988), cert. denied, 488 U.S. 1006 (1989). The trial court has broad discretion in admitting and excluding expert testimony and will be reversed only for an abuse of discretion. Mayhew v. Bell S.S. Co., 917 F.2d 961, 962 (6th Cir.1990).
 
 A.
 
 10
 Defendants contend that the trial court erred in admitting Dr. Schepers' testimony regarding cor pulmonale and other medical disabilities including end stage lung disease attributed to asbestos exposure, diseases from which neither plaintiff suffered. Dr. Schepers testified as to the progression of some cases of asbestosis leading to cor pulmonale and the sequelae of symptoms which develop over the course of the disease. Dr. Kelly testified that both plaintiffs' asbestosis was progressing.
 
 
 11
 Under Ohio law, damages may be awarded for future conditions provided they are reasonably certain to occur or exist in the future. Pennsylvania v. Files, 62 N.E. 1047 (Ohio 1901); Roberts v. Mutual Mfg. & Supply Co., 475 N.E.2d 797 (Ohio App.1984). Plaintiffs' claims included damages for reduced life expectancy, future pain and suffering, and future disabilities and disease that they believe are reasonably sure to result as a direct consequence of their injuries.
 
 
 12
 Defendants contend that not every case of asbestosis leads to cor pulmonale; therefore, they conclude that the testimony was speculative and unfair to them and inadmissible under Rule 702, Fed.R.Evid., citing Lavelle v. Owens-Corning Fiberglas Corp., 507 N.E.2d 476 (Ohio Com.Pl.1987). In Lavelle, the court declined recovery for increased risk of cancer to a plaintiff suffering from asbestosis, finding the risk speculative and noting that evidence "must tend to show that reasonable certainty of such result exists." Id. at 479 (citing Cooper v. Sisters of Charity of Cincinnati, Inc., 272 N.E.2d 97 (Ohio 1971)). Because cancer is a separate disease process from asbestosis, the plaintiff was unable to show that asbestosis leads to cancer. Lavelle, 507 N.E.2d at 479.
 
 
 13
 Testimony as to the progression of a disease is qualitatively different from the testimony of increased risk of contracting other diseases. Therefore, we reject the Lavelle analogy. Dr. Schepers' testimony emphasized the range of symptoms which flow from asbestosis, a competent statement of medical experience. See Paduchik v. Mikoff, 112 N.E.2d 69, 75 (Ohio Com.Pl.1951), aff'd, 110 N.E.2d 562 (Ohio 1953). We hold that the district court did not abuse its discretion in admitting this testimony.
 
 B.
 
 14
 The third issue presented is whether the admission of Dr. Kelly's testimony that he "expect[ed]" both plaintiffs to die at an earlier age because of lung disease was improper because (1) it lacked foundation, (2) it did not conform with a generally accepted explanatory theory, and (3) its probative value was outweighed by its prejudicial effect. Defendants allege that Dr. Kelly's testimony did not meet the "reasonably certain to occur" standard. A review of the record shows that the prognostic statements were made in response to a question by plaintiffs' counsel as to whether the doctor could state, "within a reasonable degree of medical certainty," the prognosis. Dr. Kelly answered "I believe I can, yes."
 
 
 15
 Although plaintiffs' counsel could have asked the question in less tentative language and Dr. Kelly's word choice could have more closely echoed the legal standard, we believe the record shows that Dr. Kelly's opinion reflected his high degree of certainty. Moreover, in such matters, the trial court clearly is better positioned to evaluate the demeanor of the witness and the degree to which the witness' answers were responsive to counsel's questions and the connotation of the response. Becker v. Lake Cty. Memorial Hosp. W., 560 N.E.2d 165, 170 (Ohio 1990) (affirming the admission of testimony that the need for future surgery was a "good possibility"). See also Paduchik, 110 N.E.2d at 570 (allowing doctor's testimony that injury was "apt" to happen). In light of all of Dr. Kelly's testimony and the context in which the challenged answer was made, we find this portion of the testimony met the threshold standard for admissibility.
 
 
 16
 Next, defendants contend that Dr. Kelly's testimony injecting the possibility of early death due to asbestosis failed to meet the third prong of the Kozminski test, "that an expert's opinion is based on a theory that is generally accepted in the relevant scientific community." Kozminski, 821 F.2d at 1194. They rely on Novak v. United States, 865 F.2d 718, 721 (6th Cir.1989) (finding that the specific cause of dermatomyositis/polymyositis ("DM/PM") was unknown and testimony attempting to establish a causal relationship between swine flu vaccine and DM/PM was conjectural at best), and Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1209 (6th Cir.1988) (holding that without a widely accepted medical basis for expert's opinion, proof was insufficient to sustain burden to show that contaminated water damaged immune systems) as support for this contention.
 
 
 17
 The cases cited, however, do not stand for the proposition that a doctor's experience in treating patients or personal observations are insufficient support for an opinion. Dr. Kelly testified on direct examination that he saw Carpenter's lung function deteriorate and that because he studied large groups of people he knew, basically, what could be expected to happen over time. He testified that Taylor experienced progressive loss of lung function and that chest x-rays showed progressive changes. Kelly stated that "one of the cardinal features of asbestos related lung disease, asbestosis, is progressive loss of function over time."
 
 
 18
 The contention that the unadorned personal opinion of a physician is inadequate foundation disregards the evidence upon which Dr. Kelly reached his conclusion. He had examined the plaintiffs and relied on reliable medical diagnostic tools. Had defendants believed the bases upon which Dr. Kelly reached his prognosis were suspect, they should have delved into this area on cross-examination. They did not. We find this testimony admissible.
 
 
 19
 Defendants next argue that the expert testimony should have been excluded under Fed.R.Evid. 403 as unduly prejudicial. On review, "the court must look at the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect." United States v. Smith, 736 F.2d 1103, 1107 (6th Cir.), cert. denied, 469 U.S. 868 (1984) quoting United States v. Brady, 595 F.2d 359 (6th Cir.), cert. denied, 444 U.S. 862 (1979). Here, as plaintiffs' treating physician, Dr. Kelly's opinion as to the progression of the disease in his patients, although harmful to the defendants, was extremely probative on the issue. Defendants have failed to demonstrate that it was unduly prejudicial. Therefore, we find the trial court properly admitted this testimony.
 
 IV.
 
 20
 Next, defendants argue that Taylor's claim for lost wages was unsupported by sufficient proof to reach the jury. Taylor retired from Celotex following his second cardiac bypass operation, and he requested compensation for lost wages based upon the difference in years between his actual retirement and retirement at age 65, or ten years of lost wages subject to discount by an amount reflecting Taylor's heart ailments.
 
 
 21
 To recover for impairment of earning capacity in a personal injury action "there must be evidence of the probable effect of the plaintiff's injury upon his future earnings from which the jury may, with reasonable certainty, determine the effect of the injury on earning capacity." Powell v. Montgomery, 272 N.E.2d 906, 913 (Ohio App.1971) (citation omitted). In cases where there is more than one possible cause of an injury, "the plaintiff must first show that the tortfeasor's negligence could have caused the damage in the absence of the other possible causes." Wendt v. GAF Corp., No. 92-3038, 1992 WL 379433, at * 5 (6th Cir. Dec. 15, 1992) (citing In re Bendectin Litig., 857 F.2d at 310). Here, the damages were not uncertain, Taylor retired early; however, the possibility of concurrent causes for Taylor's injuries required plaintiff to show that asbestosis could have caused the injury in the absence of heart problems.
 
 
 22
 Defendants contend that the claim, which should have been permitted only if there was evidence that asbestos exposure resulted in lost wages, is unsupported by the evidence. Defendants cite Dr. Dohn's testimony that Taylor had a "mild respiratory ailment" and that it would "interfere with manual labor type jobs" as support for their argument.
 
 
 23
 Defendants' argument ignores additional testimony from Dr. Dohn, as well as testimony from Taylor and Dr. Kelly. Taylor testified that many of his tasks at work involved manual labor which he could no longer perform, and that prior to his retirement, he required the assistance of co-workers to complete many of his assigned tasks. This testimony indicates that Taylor's respiratory ailment could have interfered with his job performance in the absence of heart problems.
 
 
 24
 Although Dr. Dohn concluded that it was difficult to assess to a reasonable degree of medical certainty which problem, cardiac or respiratory, caused what percentage of Taylor's impairment, he did find that the respiratory impairment was measurable. In light of testimony from Dr. Kelly regarding the concurrent causes, Dr. Dohn's uncertainty is inconsequential. Dr. Kelly's testimony satisfied plaintiff's burden. Dr. Kelly diagnosed asbestosis in April of 1986, prior to Taylor's retirement, and advised Taylor on two occasions to leave his work environment for health reasons. Dr. Kelly testified that Taylor suffered functional impairment as a result of asbestosis, and that heart bypass surgery notwithstanding, Taylor's heart function, by measures of echocardiogram, heart size and other studies, was essentially normal. In Dr. Kelly's opinion, Taylor's problems were respiratory in nature. The testimony of Drs. Dohn and Kelly supported plaintiff's burden of proof and the trial court did not err in allowing the jury to decide this issue.
 
 V.
 
 25
 Defendants contend that the court erred in denying their motion for new trial or remittitur because the damages awarded in this case are disproportionate to the injuries alleged and also because the juries were influenced by passion and prejudice.
 
 
 26
 The standard of review on the issue of excessiveness of a verdict is whether the verdict is "shocking" or manifests "plain injustice." Adkins v. GAF Corp., 923 F.2d 1225, 1232 (6th Cir.1991) (citation omitted). To reverse a verdict, the court engages in a detailed appraisal of the evidence bearing on damages. Id.
 
 
 27
 Here, the evidence showed that Carpenter, who received an award of $498,750 in compensatory damages, had a life expectancy which entitled him to 24 years of compensation. The record contains ample evidence that his injury affected his life, qualitatively and quantitatively. Moreover, the court properly instructed the jury to award damages sustained as a proximate result of the asbestos-related disease. Similar evidence as to life expectancy and the impact of Taylor's injury on his quality of life exists in the record, and the jury awarded Taylor $540,000 as compensation.
 
 
 28
 Neither award is "shocking" in light of the facts or in comparison to recent awards. See Doan v. Asbestos Corp., No. 91-4019, 1992 WL 379436 (6th Cir. Dec. 15, 1992) (upholding an award of $160,000 for 15 months of pain and suffering due to asbestosis), and Wendt v. GAF Corp., No. 92-3038, 1992 WL 379433 (6th Cir. Dec. 15, 1992) (upholding a $160,000 award for four months of pain and suffering due to asbestosis). See also Cantrell v. GAF Corp., 999 F.2d 1007 (6th Cir.1993) ($740,000 awarded in compensatory damages and $250,000 in loss of consortium to each spouse). Accordingly, we decline to interfere with the jury's assessment of damages.
 
 
 29
 As to the lost wages claim, the jury awarded Taylor $193,000, an amount defendants contend reflects that the jury discounted an award of $350,000 to its present value. Defendants therefore conclude that the jury failed to follow instructions to carve out the amount of lost wages due to heart disease.
 
 
 30
 There is no complaint that the juries were improperly instructed, and the jury awards were within the range of proof. Under these circumstances we uphold the jury verdict, and defendants' claim that the verdict is excessive fails. Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1471 (6th Cir.1992) (citing American Anodco, Inc. v. Reynolds Metals Co., 743 F.2d 417, 424 (6th Cir.1984)). Finally, we find defendants have failed to demonstrate the trial court admitted improper evidence which would have inflamed the passion or prejudice of the jury.
 
 
 31
 Accordingly, we AFFIRM the judgments in favor of the plaintiffs.
 
 
 
 *
 The Honorable William O. Bertelsman, United States Chief District Judge for the Eastern District of Kentucky, sitting by designation