Matthew SCHROEDER, a minor, by and through his parents and next friends Sandra and John SCHROEDER, Plaintiff,

v.

MAUMEE BD. OF EDUC., et al., Defendants.

No. 3:00CV7311.

United States District Court, N.D. Ohio, Western Division.

Dec. 8, 2003.

Thomas A. Sobecki, Toledo, OH, Jillian S. Davis, American Civil Liberties Union of Ohio, Raymond V. Vasvari, Jr., Berkman, Gordon, Murray & Devan, Cleveland, OH, for Plaintiff.

James L. Schuller, Shuller Law Office, Raymond H. Pittman, III, Schuller Law Office, Toledo, OH, David Kane Smith, Britton, Smith, Peters & Kalail, Cleveland, OH, Karin W. Rilley, Britton, Smith, Peters & Kalail, Scott C. Peters, Britton, Smith, Peters & Kalail, Cleveland, OH, for Defendants.

## ORDER

CARR, District Judge.

This is a gender discrimination and free speech case brought by plaintiff Matthew Schroeder, a minor, by and through his parents, against defendants Maumee Board of Education, Christopher Conroy, Principal of Gateway Middle School, L. James Wilson, Assistant Principal of Gateway Middle School, and Gregory Smith, Superintendent of Maumee City Schools.

Schroeder claims that individual school officials and the Maumee Board of Education violated his rights under the First and Fourteenth Amendments and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). This court had jurisdiction under 28 U.S.C. § 1331.

Pending is defendants' motion for summary judgment. For the following reasons, defendants' motion shall be granted in part and denied in part.

## BACKGROUND

Plaintiff is currently fifteen years old and receives private tutoring at his home in Toledo, Ohio. Plaintiff alleges that during fifth, sixth, and seventh grades, while he attended Fort Miami Elementary School ("Fort Miami") and Gateway Middle School ("Gateway") in Maumee, Ohio,

he was the victim of repeated, pervasive physical and verbal harassment. Plaintiff contends that, although he and his mother told defendant Conroy, Principal of Gateway, about the harassment during sixth and seventh grades, Gateway administrators failed to take any action to stop its occurrence.

Plaintiff asserts that the primary cause of the harassment was his propensity to speak out in favor of gay rights at school. He began expressing his views in fourth grade after he found out that his older brother, Chris, is gay. His views apparently led his peers, teachers, and administrators to suspect that plaintiff was also gay. Based on this perception, plaintiff alleges that many of his classmates targeted him for abuse in the forms of name-calling, offensive gesturing, and physical threats and violence.

Plaintiff contends that he did not want to fight with other pupils, so he usually walked away when they made threats, and responded to their comments "by saying things like 'why would you persecute gays if they haven't done anything to you?'" (Doc. 69, at 3). Plaintiff acknowledges that "occasionally" he responded to the harassment by calling other pupils names. (*Id.*).

Plaintiff recounts several occasions in which the name-calling and harassment escalated to physical violence against him. He points to the first such incident as the catalyst for most of the later harassment and for many of his current mental and physical injuries. He alleges that when he was in the fifth grade attending Fort Miami, a female classmate approached him at a bowling alley and, after watching plaintiff give some money to another child, said "'Are you giving him that money because you want to suck him, you little fag?'" (*Id.* at 4). Plaintiff alleges that, later, on the bus, the same child approached him with a female classmate, and made another

similar comment. Plaintiff admits that they engaged in "a round of name-calling." (*Id.*). The two girls then allegedly called plaintiff a "queer" and started kicking him. One of the girls "jumped on [plaintiff] with her knees on him." (*Id.*). Plaintiff was taken to the hospital that night; he claims he suffered serious injuries to his back and testicles.

Plaintiff alleges that this beating in fifth grade precipitated constant name-calling and other harassment, which escalated while he attended Gateway in sixth and seventh grades. He alleges that in sixth grade he told defendant Conroy about the harassment, but it did not stop. When plaintiff again approached Conroy, he alleges that Conroy asked plaintiff which of his brothers was gay, and said "'So are you a fag, too?'" (*Id.* at 5). Plaintiff alleges that Conroy then said that he "'would take care of those boys'" and told plaintiff "'[y]ou can learn to like girls. Go out for the football team.'" (*Id.*). Plaintiff also alleges that at another meeting Conroy told him that "if he shut his mouth about gay rights, he would stop getting into so many fights." (*Id.*).

Plaintiff allegedly continued to get into fights, including one incident in which a student repeatedly punched him and another said "'that's what you get, you little fag.'" (*Id.*) Plaintiff admits that he punched the child who said this, though he says it was an accident. Plaintiff contends that, because of continuous harassment and fighting, defendants Wilson and Conroy eventually told him that "the school district could not keep him safe." (*Id.*). Plaintiff alleges that the harassment continued, and that, in seventh grade, he was beaten by two older pupils in the bathroom. Plaintiff alleges that the children "slammed his head in a urinal and chipped his ... [tooth] on the urinal." (*Id.*) Plaintiff further alleges that one of the children

called him a "little faggy queero" and said "'... you're a little bitch. I'm going to kill you. I'm going to beat the living shit out of you." (Doc. 56 Exh. A, at 156–57). Plaintiff contends that he told a teacher about the altercation, but that plaintiff, not his alleged attackers, was ultimately disciplined for the incident.

Plaintiff alleges that "'tons of times'" other students at Gateway harassed him, and that he reported the incidents to his mother and to defendants Conroy and Wilson. (Doc. 69, at 6). Plaintiff says that Conroy "stated that he would take care of it" on more than one occasion. (Id.). Plaintiff also contends that, when he was in seventh grade, defendant Wilson watched several other kids call plaintiff derogatory names and beat up plaintiff after school, but did not help plaintiff when he called out for assistance. Plaintiff further alleges that Wilson did not discipline the students involved in the beating. (Doc. 66, at 42–45).

Plaintiff contends that defendants failed to enforce Gateway's policies prohibiting the abuse and harassment he suffered because of plaintiff's gender and because they perceived plaintiff to be gay. In other situations involving racial and gender discrimination, plaintiff alleges, the school did enforce its policies and protect its students. Additionally, plaintiff claims that defendants' failure to protect him, coupled with defendant Conroy's comment to plaintiff about not speaking out on gay issues, objectively chilled plaintiff's free speech rights. Finally, plaintiff claims that defendants' failure to address the harassment plaintiff endured effectively impeded his access to an education.

Defendants contend that plaintiff was simply a troubled student with a long school disciplinary record of fighting, name-calling, and other behavioral problems. Defendants also claim that they had no knowledge of the alleged harassment plaintiff suffered due to his views and others' perceptions of his sexuality. They dispute plaintiff's contentions about their statements to him.

Defendants point out that none of plaintiff's school disciplinary records make any mention of plaintiff's alleged complaints to teachers or administrators about the harassment he says he endured. Defendants claim Gateway fully investigated each of the incidents plaintiff cites, as well as each incident listed in plaintiff's disciplinary record (which defendants reproduce, in detail, in their pleadings), and that the school took appropriate action in each case in light of the information it received from students, plaintiff, his mother, and Gateway teachers and administrators. Defendants assert that none of Gateway's investigations revealed any harassment of plaintiff due to his perceived sexuality, his gender, or the sexual orientation of plaintiff's older brother.

Gateway and the Maumee Board of Education have a sexual harassment policy prohibiting all forms of sexual harassment. Defendants allege that the school uniformly enforced its anti-harassment policy in all appropriate cases. They point to incidents where girls were called "lesbian," "hermaphrodite," and "slut," in which defendants punished the perpetrator,[1] as evidence that the school fairly enforced its policy.

Plaintiff and his mother claim that they repeatedly complained to defendants Conroy and Wilson about the harassment plaintiff was suffering, but no written record of their complaints was ever made. Plaintiff contends that the lack of written documentation of the harassment and the fact that plaintiff, not others, was repeatedly disciplined reflect the school's failure to investigate and respond properly

---

**1.** Defendants punished *plaintiff* for calling classmates these names.

in situations where plaintiff was actually the victim.

Plaintiff filed this case over three years ago, after he left Gateway Middle School. He has attended several other schools since that time, and currently receives home tutoring. Plaintiff has also been in and out of the hospital and has been diagnosed with obsessive compulsive disorder, post traumatic stress syndrome, and bipolar disorder. (Doc. 66, at 25). Defendants seek summary judgment on all of plaintiff's claims.

## STANDARD OF REVIEW

Summary judgement must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

Plaintiff asserts his constitutional claims under 42 U.S.C. § 1983. To make a claim under § 1983, plaintiff must show a deprivation of a federal right committed by an individual acting under color of law. *See Collins v. City of Harker Heights,* 503 U.S. 115, 120–21, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Plaintiff asserts that defendants, acting under color of state law, violated his constitutional rights to equal protection as preserved by the Fourteenth Amendment and the exercise of free speech as preserved by the First Amendment. He also asserts that the harassment he suffered was so severe that it systematically deprived him of access to an education in violation of Title IX.[2]

---

2. I note at the outset that defendants, government officials and entities, have not asserted qualified immunity to plaintiff's claims. Normally the court's analysis would follow the qualified immunity framework, but because it is not asserted by defendants, I will instead address each of plaintiff's claims under the standard summary judgment framework.

## A. Plaintiff's Equal Protection Claim

The equal protection clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). But, only intentional, purposeful discrimination violates the equal protection clause. *See Washington v. Davis*, 426 U.S. 229, 243, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). A plaintiff must prove "that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir.1990).

Individuals who are homosexual or who are perceived to be homosexual, and are discriminated against on that basis, are members of an identifiable, protected class. *See Stemler v. City of Florence*, 126 F.3d 856, 873–74 (6th Cir.1997) (holding that equal protection claim by a woman arrested because police officers believed her to be a lesbian, even though she was not, survived summary judgment); *Nabozny v. Podlesny*, 92 F.3d 446, 453–54 (7th Cir.1996) (holding that high school students who were gay/lesbian or were perceived to be gay/lesbian could pursue claims for a violation of equal protection against school administrators who were deliberately indifferent to harassment and beatings inflicted on the students); *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F.Supp.2d 1081, 1089 (D.Minn.2000) (holding that a student who was harassed and beaten on the basis of his perceived sexual orientation could proceed with an equal protection claim).

■ For plaintiff's claim to survive defendants' motion, he must show that school administrators discriminated against him "because of his membership in [this] particular class, not merely ... [because] he was treated unfairly as an individual." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir.1999). Moreover, the school officials' discriminatory conduct must have no "rational relationship to a legitimate governmental purpose." *Romer v. Evans*, 517 U.S. 620, 635, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). The "desire to effectuate one's animus against homosexuals can never be a legitimate governmental purpose, a state action based on that animus alone violates the Equal Protection Clause." *Stemler*, 126 F.3d at 874.

Plaintiff must show either that the defendants intentionally discriminated against him or acted with deliberate indifference. *Nabozny*, 92 F.3d at 454; *Gant v. Wallingford Bd. of Educ.*, 195 F.3d at 134, 140 (2d Cir.1999). Plaintiff argues that defendants Conroy and Wilson, school administrators, knew of and were deliberately indifferent to the harassment he suffered because they perceived plaintiff to be homosexual. Plaintiff claims that the administrators' deliberate indifference represents the policy and custom of the Maumee Board of Education. Deliberate indifference "is found if the school administrator 'responds to known peer harassment in a manner that is ... clearly unreasonable.'" *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1135 (9th Cir.2003) (quoting *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 649, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999)).

### 1. Defendants Conroy and Wilson Are Not Entitled to Summary Judgment

■ Defendants Conroy and Wilson cannot be liable under § 1983 for plaintiff's claims if the harm plaintiff suffered was caused by purely private actors. *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir.1999); *Oldham v. Cincinnati Pub. Sch.*, 118

F.Supp.2d 867, 875 (S.D.Ohio 2000) (citing *DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)). Plaintiff, however, has provided evidence that he and his mother repeatedly reported the harassment and beatings to Conroy and Wilson, and that, despite their knowledge of the alleged abuse, neither took any meaningful action to protect plaintiff or discipline the perpetrators.

Were the jury to credit plaintiff's testimony about the conduct of defendants Conroy and Wilson, and not credit the defendants' testimony, it could find that defendants' actions were deliberately indifferent to plaintiff's allegations of harassment and that they failed to act or acted ineffectively to prevent further harassment of and violence toward the plaintiff. *See, e.g., Flores*, 324 F.3d at 1138.

Plaintiff has also presented evidence to show that defendants' deliberate indifference was motivated by animus against homosexuals. The remarks attributed to Conroy, if believed by the jury, and Wilson's alleged failure to intervene while students harassed and beat the plaintiff after school, could be found by the jury to have manifested homophobic animus, resulting in deliberate indifference on their part to plaintiff's complaints about how and why he was being treated as he was.

Based on the foregoing, defendants' motion as to defendants Conroy and Wilson will be denied.

### 2. Defendants Gregory Smith and Maumee Board of Education Are Entitled to Summary Judgment

■ The Supreme Court stated in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978):

a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents .... Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

Plaintiff claims that defendants Conroy and Wilson are authorized government decision makers for defendant Maumee Board of Education, and alleges that their deliberate indifference to plaintiff's harassment and abuse constitutes the policy or custom of the Board of Education. Plaintiff asserts that there was "a three-year custom of ignoring or tolerating sexually-oriented harassment against Matthew" and that "the policy makers delegated by the school board, [defendants Conroy and Wilson], were aware of that harassment for one and a half years." (Doc. 69, at 23).

Defendants argue that the Board of Education had a sexual harassment policy and states that "[o]bviously, the policy of the Board of Education was to eliminate sexual harassment in all forms." (Doc. 49, at 19). However, it is not necessarily dispositive under *Monell* that the Board had a general policy prohibiting sexual harassment. As the Sixth Circuit explained in *Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir.1994), it does not matter if the municipality in question has a general policy disfavoring an action taken by a municipal policy-maker, because "it is plain that municipal liability may be imposed for a single decision by municipal policy-makers under appropriate circumstances." *Id.* at 1117 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).[3] In the instant case,

---

**3.** The Supreme Court in *Pembaur* stated that "[t]he 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the munici-

if the decision to ignore harassment and abuse of plaintiff "was made by the government's authorized decisionmakers the [Board] is responsible." *Meyers,* 14 F.3d at 1118 (internal quotations omitted).

Plaintiff, however, offers no evidence that Defendants Conroy and Wilson were authorized decision makers for the Board of Education or that the Board is "actually responsible" for their actions. *See Pembaur,* 475 U.S. at 479–80, 106 S.Ct. 1292. Certainly, Conroy and Wilson, as Principal and Assistant Principal of Gateway, were responsible for implementing policies and customs at their school, but it does not appear that their alleged deliberate indifference to plaintiff's complaints of harassment and physical violence represented the policy or custom of the Board of Education.

Plaintiff offers no evidence that the Board of Education knew about, condoned, or was deliberately indifferent to Conroy's and Wilson's alleged discriminatory treatment of plaintiff. Although plaintiff alleges that he was victimized by his peers while he was a student at Fort Miami, before his alleged problems at Gateway with Conroy and Wilson, he does not implicate any of Fort Miami's teachers or administrators in that harassment or abuse. Nor does he offer evidence that he or his mother ever made any member of the Board or the superintendent aware of any abuse or harassment. Therefore, neither the Maumee Board of Education nor defendant Gregory Smith can be found "actually responsible" for the alleged harassment and its consequences alleged by the plaintiff.

Defendants' motion as to plaintiff's equal protection claim against defendants Maumee Board of Education and Gregory Smith will be granted.

pal
ity is actually responsible." 475 U.S. at

## B. Plaintiff's First Amendment Claim

■ The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech, or of the press." U.S. CONST. amend. I. In the public school setting, it is well established that students' First Amendment rights "are not automatically coextensive with the rights of adults in other settings." *Bethel Sch. Dist. No. 403 v. Fraser,* 478 U.S. 675, 682, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). Children, however, do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

"It is a highly appropriate function of public school education to prohibit the use of vulgar and offensive terms in public discourse." *Bethel,* 478 U.S. at 683, 106 S.Ct. 3159. Moreover, the First Amendment rights of students in public schools must be "applied in light of the special characteristics of the school environment." *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 266, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988). Plaintiff alleges that his First Amendment rights were infringed while he was a student at Gateway because his right to free speech and expression was objectively chilled by the harassment and abuse he suffered at school. He contends that defendants' conduct in response to his harassment would " 'deter a person of ordinary firmness' from exercising the First Amendment right at stake." (Doc. 69, at 16) (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982)).

Plaintiff does not provide much information about the speech that is the focus of his claim except to say that he "spoke out on gay issues," (Doc. 69, at 17) saying things such as " 'why would you persecute

479, 106 S.Ct. 1292.

gays if they haven't done anything to you?'" (*Id.* at 3). The record, though not specific or fulsomely detailed, indicates that the plaintiff spoke from time to time to teachers and other pupils at Fort Miami and Gateway in favor of gay rights and advocated for equality for gays, and that he was known to do so.

Defendants assert that plaintiff's claim has no merit because "[i]t is undisputed that Schroeder was never prohibited by Defendants from speaking out on gay issues." (Doc. 49, at 16). Defendants also point out that plaintiff's disciplinary record contains no documentation showing that he was ever disciplined for speaking out about gay rights. Defendants argue that Conroy's alleged suggestion to plaintiff that he would avoid the harassment and abuse if he stopped speaking out about gay rights was not a prohibition and clearly did not chill plaintiff's speech because plaintiff continued to make statements supporting gay rights. Finally, defendants argue that they had no duty to prevent other students—private actors—from harassing plaintiff and chilling his speech. *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

Plaintiff's principal contention is that the defendants retaliated against him because they felt animus toward his outspoken views about gay rights. To prove a claim for retaliation, plaintiff must prove:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998).

### 1. Plaintiff Was Engaged in Constitutionally Protected Speech

Defendants do not contend that plaintiff's speech is not protected speech under the First Amendment. The First Amendment clearly protects plaintiff's right to engage in politically motivated speech. "The right of an American citizen .. to advocate peacefully ideas for change is 'the central meaning of the First Amendment.'" *Id.* (quoting *New York Times v. Sullivan*, 376 U.S. 254, 273, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). Defendants, moreover, have presented no evidence that plaintiff's statements were indecent, lewd, or "wholly inconsistent with the fundamental values of public school education." *Fraser*, 478 U.S. at 685–86, 106 S.Ct. 3159; *see also Boroff v. Van Wert City Bd. of Educ.*, 220 F.3d 465 (6th Cir.2000).

### 2. Defendants' Alleged Deliberate Indifference to Plaintiff's Harassment Objectively Chilled Plaintiff's Speech

Plaintiff does not allege that defendants took direct adverse action to restrain his expression. Instead he seems to allege that defendants violated his First Amendment rights by failing to act, despite their knowledge of the harassment and abuse he suffered, because he expressed unpopular views about gay rights. In light of this allegation, plaintiff's claim may appropriately be analyzed under a deliberate indifference standard similar to that used in Title IX cases. In Title IX cases, deliberate indifference is characterized by "an official decision ... not to remedy the violation." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998). "[T]he deliberate indifference must, at a minimum, 'cause students to undergo' harassment or 'make them liable or vulnerable' to it." *Davis v. Monroe County Bd. of Educ.*, 526

U.S. 629, 645, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999).

In the instant case, I have already held that a jury might be able to find that defendants Conroy and Wilson were deliberately indifferent to plaintiff's harassment based on his perceived sexuality. On the First Amendment issue, plaintiff has established that defendant Conroy knew that plaintiff was also being harassed because he spoke out on gay issues—Conroy allegedly told plaintiff that he might reduce the harassment if he stopped speaking out on such issues. Moreover, plaintiff's alleged repeated interactions with both Conroy and Wilson regarding the harassment and its causes, if found by the jury to have occurred as plaintiff alleges, could demonstrate that both were aware of, but failed to act to remedy, harassment based on plaintiff's propensity to speak out in favor of gay rights.

Additionally, a reasonable jury could find that the deliberate indifference of defendants Conroy and Wilson objectively chilled plaintiff's speech. Although it is true, as defendants point out, that plaintiff continued to voice his views despite the harassment, "[t]he focus, of course, is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled." *Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir.2001).

A middle school student who has been harassed and abused is probably unlikely to have even ordinary firmness in his or her convictions, let alone the firmness of conviction required to continue to make highly unpopular comments in light of administrators' deliberate indifference to his or her plight. A jury, if it found on the disputed factual issues for the plaintiff, could conclude that the unresponsiveness alleged against Conroy and Wilson would chill the speech a person of ordinary firmness.

There is, however, no evidence that defendants Conroy and Wilson acted on behalf of the Maumee Board of Education or Gregory Smith. Applying the same *Monell* analysis I applied in Section A.2, *supra,* I find that the deliberate indifference of Conroy and Wilson was not a policy or custom of the Board.

3. **Plaintiff Has Not Established that Defendants Were Motivated by Plaintiff's Exercise of his First Amendment Rights**

To successfully proceed with his First Amendment claim, plaintiff must also establish that defendants acted based on their animus against plaintiff's expression of his views. He has failed to do so. Plaintiff fails to cite any conduct or suggestion of such animus other than behavior which I have ruled establishes an animus based on plaintiff's perceived sexuality. Animus based on a perception about sexuality is not the same as animus based on another person's expression of his views.

Plaintiff has not suggested that defendants acted as they did because he spoke out about gay issues, nor has he suggested that he spoke about gay rights to any administrator or member of the Maumee Board of Education. Plaintiff alleges that defendants Conroy and Wilson knew of plaintiff's statements about gay rights, but he does not assert that either acted against him in response to this knowledge. Plaintiff's only evidence is his testimony that defendant Conroy told him that if he "shut his mouth about gay rights," he might not have as many problems. (Doc. 69, at 5). Conroy's suggestion that plaintiff refrain from speaking out about gay rights could only be viewed by a rational trier of fact as an isolated suggestion, which plaintiff could accept or not, as he saw fit, not as either an implicit or explicit directive or expression of opposition to plaintiff's personal beliefs and his

expression of those beliefs. This comment, without more, does not show that any deliberate indifference toward plaintiff's circumstances resulted from animus towards his exercise of his right to speak freely.

Additionally, there is likewise no evidence whatsoever that the Maumee Board of Education or Superintendent Gregory Smith acted against plaintiff based on animus toward his expression of his views about gay rights.

Therefore, defendants' motion for summary judgment on plaintiff's First Amendment claim will be granted as to all defendants.

### C. Defendants Are Not Entitled to Summary Judgment on Plaintiff's Title IX Claim

■ Title IX provides that: ᐧ ᐧᐧ

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

Plaintiff alleges that defendants Maumee Board of Education and Superintendent Gregory Smith violated Title IX because Gateway administrators were deliberately indifferent to the harassment plaintiff allegedly suffered. Plaintiff contends that Wilson and Conroy were "delegated policymakers" of the Board of Education, and that notice to the delegated policymakers constitutes notice of plaintiff's harassment to the Board. (Doc. 69, at 23 n. 3).

It is well established that only funding recipients (i.e., boards of education), and not individuals, can be liable under Title IX. *Davis*, 526 U.S. at 641–42, 119 S.Ct.

1661 (citing *Natl. Collegiate Athletic Assn. v. Smith*, 525 U.S. 459, 467 n. 5, 119 S.Ct. 924, 142 L.Ed.2d 929 (1999)). Moreover, funding recipients are liable for damages under Title IX only for their own misconduct.[4] *Davis*, 526 U.S. at 641, 119 S.Ct. 1661. To prevail on a Title IX claim for student-on-student sexual harassment, plaintiff must show:

> (1) that the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school, (2) that the funding recipient had actual knowledge of the sexual harassment, and (3) that the funding recipient was deliberately indifferent to the harassment.

*Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir.1999) (citing *Davis*, 526 U.S. at 633–642, 119 S.Ct. 1661).

■■ Plaintiff has presented evidence, which, if credited by the jury, could lead to a finding that he suffered severe, pervasive, and objectively offensive harassment.

Defendants argue that plaintiff has presented no evidence that he was discriminated against "based on sex," as expressly required by Title IX. Plaintiff has asserted, however, that he was repeatedly harassed based on his perceived sexual orientation and that defendants failed to do anything to address the harassment. Defendants admit that they disciplined plaintiff for calling girls "lesbian" and "slut." According to plaintiff's testimony, however, defendants failed to discipline plaintiff's harassers for calling him "fag" and "queer" and for other sexual harassment such as pushing plaintiff's face into the bus window and saying " 'Kiss it, you little fag. Kiss it.' " (Doc. 69, at 6).

---

4. "The recipient itself must exclude persons from participation in, deny persons the benefits of, or subject persons to discrimination under its programs or activities in order to be liable under Title IX." *Davis*, 526 U.S. at 640–41, 119 S.Ct. 1661.

A jury could find that this harassment, and the failure to punish it, was motivated by plaintiff's sex. *See Montgomery*, 109 F.Supp.2d at 1090–91 (finding that students tormenting another student based on their perception that he was gay was sufficient to proceed on a Title IX sex discrimination claim); *Carrasco v. Lenox Hill Hosp.*, 2000 WL 520640, at *8 (S.D.N.Y. Apr.28, 2000) (finding that discrimination based on the plaintiff's perceived sexuality was discrimination based on sex because "the comments focused on the sexual conduct of plaintiff as a man"); *Samborski v. West Valley Nuclear Servs. Co.*, 1999 WL 1293351, at *4 (W.D.N.Y. Nov.24, 1999); *see also Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78–79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (finding that same-sex sexual harassment is sex discrimination under Title VII); *Galdieri–Ambrosini v. Nat. Realty & Dev.*, 136 F.3d 276, 289 (2d Cir.1998) ("[e]vidence of sexual stereotyping may provide proof that an employment decision or an abusive environment was based on gender").

Defendants Conroy and Wilson are alleged to have had actual knowledge of plaintiff's harassment. Plaintiff and his mother both testified that they told Conroy and Wilson about the harassment, but that neither acted to curtail it.

There is, however, no evidence that defendants Board of Education or Gregory Smith had any personal knowledge of the harassment. The Supreme Court has expressly rejected the use of "principles of respondeat superior or constructive notice" as a basis for imposing liability on a school district under Title IX. *Gebser*, 524 U.S. at 285, 118 S.Ct. 1989.

It is not necessary, however, that the Board or Smith had personal knowledge of the harassment to find actual knowledge by the Board. Title IX imposes liability when "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to respond." *Id.* at 290, 118 S.Ct. 1989.

A jury could find that defendants Conroy and Wilson had authority to address the alleged harassment and institute corrective measures on his behalf. Their knowledge is therefore imputed to the Board of Education for Title IX purposes. Plaintiff has thus met his burden on the second of the three factors. *See Gebser*, 524 U.S. at 291, 118 S.Ct. 1989 (finding that the school district had actual notice of a teacher's inappropriately suggestive comments made during class because the principal knew about the comments, but finding that this information did not give the principal actual notice of the teacher's sexual relationship with the student).

I have already held that a jury could find defendants Conroy and Wilson were deliberately indifferent to plaintiff's harassment. Deliberate indifference refers to situations where the funding recipient "cause[s] students to undergo harassment or make[s] them liable or vulnerable to it." *Davis*, 526 U.S. at 645, 119 S.Ct. 1661 (internal quotations omitted). "[T]he recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Id.* at 649, 119 S.Ct. 1661.

Plaintiff's proof, if credited by the jury, could lead to a finding that Conroy and Wilson knew of but failed to do anything to address the harassment of plaintiff by other pupils, and that they thereby fostered an environment in which such harassment was accepted, and which made plaintiff more vulnerable to further harassment and. *Cf. Soper*, 195 F.3d at 855 (finding that defendant school board and its administrators did not have actual knowledge because they did not know of the harass-

ment until after it took place, and when they did learn of it, they immediately took action and corrected the situation).

Defendants' motion for summary judgment on plaintiff's Title IX claim, therefore, will be denied.

### CONCLUSION

In light of the foregoing, it is hereby

ORDERED THAT

1. Defendants' motion for summary judgment on plaintiff's equal protection claim be and the same hereby is denied as to defendants Conroy and Wilson and be, and hereby is granted as to defendants Maumee Board of Education and Gregory Smith;

2. Defendants' motion for summary judgment on plaintiff's First Amendment claim be, and the same hereby is granted as to all defendants; and

3. Defendants' motion for summary judgment on plaintiff's Title IX claim be, and the same hereby is denied.

So ordered.